## UNITED STATES v. RICHARD JOHNS. (a)

*Habeas corpus.—Challenges.—Witness.—Evidence.—Casting away vessel.*

Upon a *habeas corpus,* it can only be inquired, whether there is sufficient probable cause to believe, that the person charged has committed the offence stated in the warrant of commitment.

On an indictment under the act of congress of 26th March 1834, for casting away and destroying a vessel, of which the defendant was the owner, to the prejudice of the underwriters, the accused has the right of peremptory challenge, as at common law, on a capital charge.

The president of an incorporated company, by which a vessel has been insured, is a competent witness against the defendant, on such a prosecution.

A copy of a manifest, taken from the books of a custom-house, is a copy of a record, and it may be given in evidence, when properly proved.

An exemplification of a law of a state, under the great seal thereof, is admissible in evidence, without any other attestation.

The meaning of the word "destroy," in this act, is to unfit a vessel for service, beyond the hopes of recovery by ordinary means; casting away, is a species of destroying.

THIS was a prosecution, on the 2d section of the act of congress, of the 26th of March 1804 (2 U. S. Stat. 290), which is expressed in these words: "That if any person shall, on the high seas, wilfully and corruptly cast away, burn or otherwise destroy, any ship or vessel of which he is owner, in part or in whole, or in anywise direct or procure the same to be done, with intent or design to prejudice any person or persons that hath underwritten, or shall underwrite, any policy or policies of insurance thereon; or if any merchant or merchants that shall load goods thereon, or any other owner or owners of such ship or vessel, the person or persons offending therein, being thereof lawfully convicted, shall be deemed and adjudged guilty of felony, and shall suffer death."(b)

In the course of the prosecution and trial the following points occurred:

I. The defendant was brought by *habeas corpus* before the court, holding an adjourned session, on the 8th of January 1806, when it appeared *413] that, on the 26th of December 1805, he *had been committed by the mayor of the city of Philadelphia, charged on the oath of Andrew Clarke, with having, on the 20th day of August last, or thereabouts, on the high seas, scuttled the schooner Enterprise, of Baltimore, with intention to defraud the underwriters, as he believes."

---

(a) s. c. 1 W. C. C. 363.

(b) The second member of the section is so inaccurately expressed, that the attorney of the district thought, at first, there must have been some error of the press; but the secretary of state informed him, that the printed copy was found, upon a comparison, to agree exactly with the roll. See the analogous English statutes, 4 Geo. I., c. 12, § 3; 11 Geo. I., c. 29.

United States v. Johns.

The *prisoner's* counsel objected, 1st. That the commitment was vague, and did not describe the offence, within the words of the act of congress. 2d. That the offence was not committed within the district of Pennsylvania; and no demand having been made for his surrender, by the executive of any other state, there was no law to warrant his arrest or detention. 3d. That the evidence was not sufficiently strong, to found an indictment against him, and he was entitled, at all events, to be discharged on bail.

It was answered by the *Attorney of the District*, 1st. That whatever might be the formal defects of the original commitment, the court, being now satisfied with the evidence, would remand the prisoner for trial. 2d. That it was not necessary, for that purpose, to give positive proof of guilt ; but to show probable cause for the accusation. 3d. That the case did not come, at all, under the constitutional or legislative provisions for the surrender of a fugitive from the justice of another state ; but it was the case of a crime against the United States, committed on the high seas ; when the trial is directed to be in the district where the offender is apprehended. (1 U. S. Stat. 113, § 8 ; Ibid. 91, § 33.)

By THE COURT.—Upon a *habeas corpus*, we are only to inquire whether the warrant of commitment states a sufficient probable cause to believe, that the person charged has committed the offence stated. We have heard the evidence ; and cannot doubt of its sufficiency to that extent. We do not think that the prisoner ought either to be discharged or bailed: he must be remanded for trial.

II. When the panel of jurors was called over, the prisoner's counsel claimed the right of challenging thirty-five jurors peremptorily, as the offence charged in the indictment, had been created, since the act of the 30th of April 1790 (1 U. S. Stat. 119, § 30); and the right of challenge remained as at common law.   (4 Hawk. 389 ; 4 Bl. Com. 352.)   The clause, respecting challenges is in these words: "If any person or persons be indicted of treason against the United States, and shall stand mute, or refuse to plead, or shall challenge peremptorily above the number of thirty-five of the jury; or if any other person or persons be indicted of any other of the offences herein-before set forth, for which the punishment is declared to be death, if he or they shall so stand mute, or will not answer to the indictment, or challenge peremptorily above the number of twenty persons of the jury, the court, in any of the cases aforesaid, shall, notwithstanding, proceed to the *trial of the person or persons so standing mute or [*414 challenging, as if he or they had pleaded not guilty, and render judgment thereon accordingly."

The *Attorney of the District* said, he was indifferent which way the court decided the point ; but it was proper to remark, that the 29th section of the judicial act referred, generally, to the state law, for the rule relating to juries (1 U. S. Stat. 88); that the state law limited the right of peremptory challenge, in cases like the present, to the number of twenty; that the 30th section of the penal act (Ibid. 119) obviously considers the whole law of peremptory challenge provided for, in future, as well as existing, capital cases ; and that it was improper to refer to a common-law rule, if a rule was prescribed by statute.

*United States v. Johns.*

PETERS, Justice.—The words of the penal act when they restrain the common-law right of peremptory challenge, also expressly confine the operation of the restraint, to the offences before set forth in the act. For offences not set forth in the act, the only rule is furnished by the common law; and it is the privilege of the prisoner that it should be applied and enforced.

WASHINGTON, Justice.—The right of challenge was a privilege highly esteemed, and anxiously guarded, at the common law; and it cannot be doubted, but that at the common law, a prisoner is entitled, on a capital charge, to challenge peremptorily thirty-five of the jurors. If, therefore, the act of congress has substituted no other rule (and, in the present instance, it is clear, that none has been substituted), the common-law rule must be pursued. It is not easy, indeed, to assign a reason for introducing the words that confine the provision, respecting peremptory challenges, to offences before set forth in the act ; but it is enough to bind our judgments, that the words are actually introduced.(*a*)

III. The indictment contained four counts: 1st Count. That the prisoner being owner, in whole, of a certain ship or vessel called the Enterprise, of Baltimore, " the Baltimore Insurance Company, by their president, and under their corporate seal, attested by their secretary, did subscribe and underwrite a certain policy of insurance upon the said ship or vessel, called the Enterprise, in the sum of $2700, upon a certain voyage, &c. And the said Richard Johns, well knowing the premises, with intent and design wilfully, corruptly, unlawfully, and feloniously to prejudice the said Baltimore Insurance Company, &c., and by means \*of the aforesaid insurance, unjustly to acquire to himself unlawful and corrupt gain and advantage, on the, &c., with force and arms, on the high seas, &c., wilfully, corruptly, unlawfully and feloniously, did cast away and destroy the said ship or vessel, called the Enterprise, in and upon the voyage in the said policy of insurance, mentioned, &c., to the great damage of the said Baltimore Insurance Company, against the form of the act of the congress of the United States, &c." 2d Count. That he committed the felony, by feloniously boring auger-holes through the bottom of the vessel. 3d Count. That he feloniously directed and procured the vessel to be cast away and destroyed. 4th Count. That he feloniously directed and procured the vessel to be cast away and destroyed, by feloniously boring auger-holes through the bottom of the vessel.

1st. The president of the Baltimore Insurance Company was offered as a witness, to prove the order for insurance, and the subscription to the policy.(*b*) The prisoner's counsel objected to his competency ; and cited 1 P. Wms. 595 ; 1 McNall. 52–3. But the objection was overruled.

2d. A copy of the manifest of the outward cargo of the Enterprise,

---

(*a*) In the case of the United States *v.* Russell, on an indictment for murder on the high seas, tried at October term 1806, the prisoner's counsel, at first, claimed the right of peremptorily challenging thirty-five jurors ; but that being an offence set forth in the penal law, was expressly embraced by the provision limiting the peremptory challenges to twenty ; and the claim was, accordingly, overruled.

(*b*) But see 1 W. C. C. 368.

United States v. Johns.

certified under the hands and seal of the custom-house officers of Baltimore, was offered in evidence, after proof by the witness, that he had himself compared it with the record. The prisoner's counsel objected, that there was no evidence, that the original manifest was subscribed by the prisoner, or even delivered by him. The district-attorney answered, that by 21st section of the impost law (1 U. S. Stat. 642) it was made the duty of the collector of the port, "to record, in books to be kept for that purpose, all manifests;" and that being a record, the proof offered was unexceptionable.

BY THE COURT.—In that point of view, the evidence is clearly admissible.

3d. The policy of insurance, under the corporate seal of the company, signed by the president and attested by the secretary, was offered in evidence. The prisoner's counsel objected, that the charter of incorporation must be produced, before any corporate act or instrument could be given in evidence. The attorney of the district opposed the objection, on account of the difficulty, which the precedent would create in future prosecutions : but the court deeming it necessary to establish the corporate capacity of the Insurance Company, he read the acts of the legislature of Maryland on that subject, from the statute book, published by authority ; and these being limited in their duration, he offered an exemplification of a recent act, protracting the existence of the corporation at and beyond the time or subscribing the policy in *question. The exemplification, [*416 however, was under the great seal of Maryland, but was not attested by the governor, or any other principal officer of the state. The prisoner's counsel objected to the want of such attestation ; but the objection was overruled.

BY THE COURT.—The act of congress declares, "that the acts of the legislatures of the several states shall be authenticated, by having the seal of their respective states affixed thereto." (1 U. S. Stat. 122.) It does not require the attestation of any public officer, in this case; although in all the cases afterwards provided for, such an attestation is required. There is a good reason for the distinction. The seal is, in itself, the highest test of authenticity ; and leaving the evidence upon that alone, precludes all controversy as to the officer entitled to affix the seal, which is a regulation very different in the different states.

4th. On the evidence in the cause, various grounds of defence were adopted by the prisoner's counsel, Lewis, Rawle, S. Levy, S. Ewing and C. Ingersoll, and controverted by Dallas, attorney of the district, of which the principal were these : 1st. That the second section of the act of congress does not expressly authorize an indictment against an American citizen ; and it would be an usurpation of legislative power, to extend its operation to aliens, committing offences on the high seas. 2d. That the act does not expressly embrace the case of an insurance by a corporation ; and a corporation is not included in the description of persons. 3d. That the indictment describes the Enterprise to be a ship or vessel, which is not sufficiently specific. 4th. That in fact, and in law, the vessel was not cast

away and destroyed. 5th. That if the vessel were feloniously destroyed, the evidence does not prove the prisoner to be the felon.(a)

THE COURT, in the charge to the jury, having reviewed and commented upon the facts, observed, that the objections, in point of law, would appear on the record, and might be taken advantage of, upon a motion in arrest of judgment. On the law, therefore, the court avoided giving any opinion at present, except in relation to the question, what constituted the destruction of a ship or vessel, within the meaning of the act of congress? On this question, they had deliberated much; and as the result, reduced to writing an opinion, which they delivered, in charge to *the jury, in these *417] words : "To destroy a vessel, is to unfit her for service, beyond the hopes of recovery, by ordinary means. This, in extent of injury, is synonymous with cast away. It is the generical term : casting away is a species of destroying, as burning is. Both mean such an act, as causes a vessel to perish, or be lost, so as to be irrecoverable by ordinary means."

The defendant was acquitted, owing, it is believed, to a doubt, whether he had bored himself, or directed any other person to bore, the auger-holes in the bottom of the vessel ; which was a new vessel, picked up at sea, after she was abandoned, carried into St. Jago de Cuba, and there (the holes being discovered) soon repaired, and fitted again for sea.

---

(a) In the course of the defence, the following authorities were cited : 2 East P. C. 1097-8 ; Johnson's Dict. "Cast-away;" 8 Mod. 67, ca. 48 ; Ib. 74, ca. 52 ; 4 Hawk. 67, 62 ; 2 Burr. 1037 ; Plowd. 177 ; Rex v. Harrison, 1 Leach, 215 ; 2 Str. 1241 ; 8 Mod. 66 ; 1 Hale 635 ; 2 Id. 389 ; 3 Inst. 202 ; 4 Bl. Com. 881 ; Leach 109 ; Cow. Interp.; 2 Hawk. c. 25, § 82 ; 2 Rol. Abr. 30 ; 5 Mod. 137-8. The attorney of the district cited 1 Leach 215 ; 1 Bl. Com. 467 ; 2 Inst. 702 ; 1 Woodes. 195.

