THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN R. SPARGO, Defendant-Appellant.

Second District   No. 80-922

Opinion filed January 19, 1982.—Rehearing denied February 17, 1982.

James A. Campion, of Holmstrom and Green, of Woodstock, for appellant.

Theodore J. Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, John R. Spargo, appeals from his conviction for the offense of child pornography (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a)

and contends: (1) that section 11—20a of the Criminal Code of 1961 is unconstitutionally overbroad and (2) that section 11—20a is unconstitutionally vague and violates Federal and State due process requirements.

On August 30, 1979, defendant was charged by information with violation of section 11—20a(b)(1)(A) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(b)(1)(A)). The information alleged that on August 17, 1979, defendant exhibited certain child pornography to Edward J. Flynn. Subsequently, defendant filed a motion to dismiss the information alleging that the child pornography statute was unconstitutional in various respects. In a memorandum opinion, the trial judge denied defendant's motion, and the case proceeded to a bench trial.

The only evidence introduced at trial was a stipulation of facts and the State's exhibit containing the alleged child pornography. The factual stipulation was as follows:

"1. That Edward J. Flynn, (hereinafter referred to as 'Flynn'), an adult male, was, during the years of 1978 and 1979, a senior investigator for the Illinois Legislative Investigation Commission.

2. That John R. Spargo, (hereinafter referred to as 'Spargo'), an adult male, was, at all times relevant hereto, a resident of Lake Geneva, Wisconsin.

3. That Spargo was unaware that Flynn was a law enforcement officer, and Flynn never informed Spargo of the fact until after Spargo's arrest.

4. That at the request of Flynn, Spargo and Flynn met at the McHenry Dam State Park in McHenry County, Illinois, on Friday, August 17, 1979.

5. That at the request of Flynn, Spargo brought with him to that meeting People's Exhibit #1.

6. That at the request of Flynn, and while both parties were sitting in Flynn's automobile, Spargo showed and/or exhibited to Flynn, and the parties mutually viewed, People's Exhibit #1 and its contents.

7. That thereupon, Flynn placed Spargo under arrest.

8. That Spargo did not sell or deliver nor did he offer to sell or deliver People's Exhibit #1 or any of the contents thereof, to Flynn."

People's exhibit No. 1 is an album consisting of 70 3″ x 4″ color photographs of young, nude boys engaged in acts of masturbation and exhibition of their genitals and pubic area. There are multiple photographs of the same boy on a page with his name, age and brief comments about the child's sexual traits. The ages listed for the boys range from 11 to 16. The court found the defendant guilty of the offense of child pornography and set a date for a sentencing hearing. On October 29,

1980, defendant was sentenced to a term of 24 months' probation and fined $1,000.

Defendant contends that section 11—20a of the Criminal Code of 1961 is unconstitutionally overbroad in that it makes criminal the conduct involved herein, *i.e.*, the showing of obscene photographs to another within the privacy of that person's automobile. It should be noted initially that defendant is correct in his initial premise that the statute does appear to prohibit this kind of conduct. The statute makes anyone who "exhibits" child pornography guilty of a Class 4 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(b)(1)(A).) The statute does not purport to regulate only the commercial exhibition of child pornography, as evidenced by the lack of a qualifier for the word "exhibits." Further evidence of this is found in the combined reading of sections 11—20 and 11—20a. Section 11—20 of the Criminal Code of 1961, which pertains to the offense of obscenity, provides that it is an affirmative defense to the offense of obscenity if the dissemination "[w]as not for gain and was made to personal associates * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 11—20(f)(1).) However, the child pornography statute contains no such affirmative defense, thereby clearly manifesting the legislative intent to prohibit even the private exhibition or dissemination of such material.

Section 11—20a provides in its pertinent parts:

"(b) Offense. (1) Any person, who with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed such nature or content, commits a Class 4 felony to which a fine of up to $25,000 may be added when he or she:

(A) Sells, delivers, exhibits or otherwise makes available, or offers or agrees to sell, deliver, or otherwise make available, any child pornography; * * *."

(Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(b)(1)(A).)

Defendant cites the United States Supreme Court decision in *Stanley v. Georgia* (1969), 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243, as support for his proposition that the State cannot constitutionally prohibit the private noncommercial dissemination or exhibition of child pornography.

In *Stanley*, pursuant to a warrant, Federal and State agents, while searching defendant's home for evidence of alleged bookmaking activity, discovered three reels of eight-millimeter film. Defendant was subsequently indicted and convicted for knowingly having possession of obscene matter. The Supreme Court reversed the conviction while holding that the first and fourteenth amendments prohibit making mere private possession of obscene matter a crime. In so holding, Justice Marshall for the majority stated:

"It is now well established that the Constitution protects the right

to receive information and ideas. 'This freedom [of speech and press] * * * necessarily protects the right to receive * * *.' *Martin v. City of Struthers*, 319 U.S. 141, 143, [87 L. Ed. 1313, 1316-17, 63 S. Ct. 862] (1943); [citations]. This right to receive information and ideas, regardless of their social worth, see *Winters v. New York*, 333 U.S. 507, 510, [92 L. Ed. 840, 847, 68 S. Ct. 665] (1948), is fundamental to our free society." 394 U.S. 557, 564, 22 L. Ed. 2d 542, 549, 89 S. Ct. 1243, 1247.

Defendant relies on this "right to receive" obscene matter as support for his contention that noncommercial exhibition of obscene matter cannot be constitutionally prohibited. However, subsequent decisions of the Supreme Court have interpreted *Stanley* in a more restrictive fashion.

In *United States v. Reidel* (1971), 402 U.S. 351, 28 L. Ed. 2d 813, 91 S. Ct. 1410, the defendant has been indicted for having mailed a single copy of a booklet assumed to be obscene in violation of section 1461 of title 18 of the U.S. Code. The court held that whatever the scope of the "right to receive" referred to in *Stanley*, it was not so broad as to immunize dealings in obscenity. The court further stated that the focus of the *Stanley* decision "was on freedom of mind and thought and on the privacy of one's home." 402 U.S. 351, 356, 28 L. Ed. 2d 813, 817, 91 S. Ct. 1410, 1412.

■■ Later Supreme Court cases are consistent in their interpretation of *Stanley* as protective only of the right to possess obscene material in one's own home. For example, in *United States v. Orito* (1973), 413 U.S. 139, 37 L. Ed. 2d 513, 93 S. Ct. 2674, Chief Justice Burger for the majority stated:

"The essence of appellee's contentions is that *Stanley* has firmly established the right to possess obscene material in the privacy of the home and that this creates a correlative right to receive it, transport it, or distribute it. We have rejected that reasoning. This case was decided by the District Court before our decisions in *United States v. Thirty-seven Photographs*, 402 U.S. 363, [28 L. Ed. 2d 822, 91 S. Ct. 1400,] (1971), and *United States v. Reidel*, 402 U.S. 351, [28 L. Ed. 2d 813, 91 S. Ct. 1410] (1971). Those holdings negate the idea that some zone of constitutionally protected privacy follows such material when it is moved outside the home area protected by *Stanley*." (413 U.S. 139, 141-42, 37 L. Ed. 2d 513, 517, 93 S. Ct. 2674, 2677. See also *United States v. 12 200-Ft. Reels of Super 8 mm. Film* (1973), 413 U.S. 123, 126, 37 L. Ed. 2d 500, 505, 93 S. Ct. 2665, 2668 (stating that *Stanley* depended, not on any first amendment right to purchase or possess obscene materials, but on the right of privacy in the home).)

Similarly, the Illinois Supreme Court has interpreted *Reidel* to limit *Stanley* to "factual situations which do not involve actions outside the

home." (*People v. Garrison* (1980), 82 Ill. 2d 444, 448, 412 N.E.2d 483.) Whatever constitutional protections *Stanley* confers were relinquished by the defendant when he removed the child pornography from the confines of his own home and exhibited it to another.

Defendant, however, contends that the prohibition of private, non-commercial exhibition of child pornography is not rationally related to the State's goal of protecting children. That the State has a legitimate interest in protecting its children is a matter not open to dispute. (*Ginsberg v. New York* (1968), 390 U.S. 629, 640, 20 L. Ed. 2d 195, 204, 88 S. Ct. 1274, 1281.) The Supreme Court has frequently acted to protect the interests of children from sexual and other forms of exploitation. See, *e.g., Prince v. Massachusetts* (1944), 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (conviction affirmed for violation of child labor law by allowing nine-year-old girl to sell religious sect material on the street); *Ginsberg v. New York* (1968), 390 U.S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (conviction affirmed under New York law prohibiting the selling of material which has a predominant appeal to prurient interests of minors).

■■ Unlike other forms of obscenity legislation, the evil sought to be prevented by the child pornography statute is not any alleged "antisocial behavior" which may result from the viewing of such material. (See *Roth v. United States* (1957), 354 U.S. 476, 485-86, 1 L. Ed. 2d 1498, 1507-08, 77 S. Ct. 1304, 1309-10.) Rather, the statute seeks to protect the real victims of child pornography—the children needed for its production. In this regard, we note that we need not decide herein whether private exhibition outside the home of forms of obscenity other than child pornography would be constitutional in light of the different interests involved.

■■ ■ Defendant argues, however, that if the State's goal is to prevent children from becoming involved in child pornography, a prohibition on the private, noncommercial exhibition does not reasonably relate to that goal. However, we agree with the State that a ban on such exhibition will decrease the demand for such material, thus decreasing the need for solicitation of children for its production. Defendant, however, cites certain language in the *Stanley* decision for the proposition that a State cannot make criminal an otherwise noncriminal act for the purpose of diminishing the likelihood of future criminal activity. The court in *Stanley* stated:

> "But more important, if the State is only concerned about printed or filmed materials inducing antisocial conduct, we believe that in the context of private consumption of ideas and information we should adhere to the view that '[a]mong free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law. . . .' *Whitney v. California,* 274 U.S. 357, 378, [71 L. Ed. 1095, 1107, 47 S. Ct. 641] (1927),

(Brandeis, J., concurring)." (394 U.S. 557, 566-67, 22 L. Ed. 2d 542, 550-51, 89 S. Ct. 1243, 1248-49.)

We do not read this language as establishing the rule that a State may never constitutionally proscribe actions which increase the demand for an illicit product. This is especially true in a case such as this where the production of the product can have such damaging consequences on the children involved. The States retain broad powers to regulate obscenity. (394 U.S. 557, 568, 22 L. Ed. 2d 542, 551, 89 S. Ct. 1243, 1250.) Under the terms of the Illinois child pornography statute, in order to be classified as child pornography, the material must necessarily be obscene. (See *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607.) The trial judge in this case found defendant's photographs to be child pornography, and defendant does not contend otherwise on appeal. Considering the strong and compelling interest this State has in preventing children from becoming involved in the production of child pornography, we believe that a prohibition on private, noncommercial exhibition of child pornography is well within the broad constitutional powers of the State to regulate obscenity. Other States have enacted similar legislation prohibiting the exhibition of child pornography if obscene, thus also evincing a compelling State interest in regulating against the sexual exploitation of children. See, *e.g.,* Fla. Stat. Ann. §847.014(2)(b) (1981); Ind. Code Ann. §35—30—10.1—2 (1979); Neb. Rev. Stat. §28—1463(2) (1979); N.H. Rev. Stat. Ann. §650:2 (1979); Or. Rev. Stat. §163.485 (1979).

■■ We also reject defendant's argument, however, because it assumes that the harm to be prevented by the statute stems only from the actual production of child pornography. We believe that children who have already been the subject of graphic sexual depiction in some form of child pornography have an interest in having such material shielded from the view of others. As damaging as the initial sexual exploitation involved when the photographs were taken is the continuing fear of exposure from distribution and the possible tension of keeping the act secret. Exhibition of the photographs in the case at bar, for example, could very well lead to further contact and exploitation of the child since the children's names and sexual traits were contained in People's Exhibit No. 1. The inability of children to give an informed consent to participation in child pornography justifies the statute's prohibition against the material's later exhibition. The Supreme Court has recognized the "peculiar vulnerability" of children while stating that "during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." (*Bellotti v. Baird* (1979), 443 U.S. 622, 634-35, 61 L. Ed. 2d 797, 807-08, 99 S. Ct. 3035, 3043-44.) Of course, child pornography may also be the result of physical abuse or blackmail which completely renders meaningless the

child's ability to consent. (See Guio, Burgess & Kelly, *Child Victimization: Pornography and Prostitution*, 3 J. Crime & Just. 65 (1980).) We therefore hold that whatever first amendment interest defendant has in the private, noncommercial exhibition of child pornography outside of his home is more than sufficiently outweighed by the State's interest in preventing the solicitation of children for the production of child pornography and in preventing further harm to those children who have already been victimized by this practice.

Defendant next contends that section 11—20a is unconstitutionally vague in that it violates Federal and State due process standards in three respects. First, defendant asserts that the statute is unconstitutionally vague in that it fails to adequately inform how the trier of fact is to apply the standards defining obscenity set forth in the statute. Defendant's argument proceeds as follows:

Section 11—20a of the Criminal Code provides that matter will be considered "child pornography" if:

"(A) it has as one of its participants or portrayed observers a child under the age of 16 or who appears as pre-pubescent; and

(B) it contains depictions or descriptions of sexual conduct which are patently offensive; and

(C) taken as a whole, the average person, applying contemporary standards of this State, would find it has as its dominant theme an appeal to prurient interest; and

(D) taken as a whole, it lacks serious literary, artistic, educational, political or scientific purpose or value." (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(a)(1).)

However, the statute also provides that, in interpreting the evidence, "[c]hild pornography shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience." (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(c).) Defendant asserts that once the court has determined that the material has been designed for a "specially susceptible audience" the statute makes it unclear whether the trier of fact must make the factual determinations listed in 11—20a(a)(1) with reference to the specially susceptible audience or whether the determinations are to be made with reference to "ordinary adults." For example, if the court determines that the material is designed for the specially susceptible audience of pedophiles, must the court then determine that the material is "patently offensive" and "lacks serious literary, artistic, educational, political or scientific purpose or value" to the average pedophile, or must the court make those determinations with reference to the "ordinary adult"? Obviously, the former is a rather

strained interpretation of the statute. However, this is not to say that the statute is well drafted. A purely mechanical reading of the statute would seem to indicate that the court should, in fact, make these factual determinations with reference to the "specially susceptible audience." However, the Supreme Court's decision in *Mishkin v. New York* (1966), 383 U.S. 502, 16 L. Ed. 2d 56, 86 S. Ct. 958, shows clearly that this is not the statute's aim.

In *Mishkin*, defendant was found guilty of violating a New York obscenity statute by hiring others to prepare obscene books, publishing obscene books, and possessing obscene books with intent to sell them. In the Supreme Court, defendant contended that some of his books could not be considered obscene because they did not meet the "prurient interest" requirement of obscenity articulated in *Roth v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304. Defendant reasoned that those books which depicted deviate sexual practices, such as flagellation, fetishism, and lesbianism, did not satisfy the requirement because they did not appeal to the prurient interest of the "average person" in sex. Defendant argued that "instead of stimulating the erotic, they disgust and sicken." (383 U.S. 502, 508, 16 L. Ed. 2d 56, 62, 86 S. Ct. 958, 963.) In rejecting this argument, the court stated:

> "Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. The reference to the 'average' or 'normal' person in *Roth*, 354 U.S., at 489-490, [1 L. Ed. 2d at 1510,] does not foreclose this holding. In regard to the prurient-appeal requirement, the concept of the 'average' or 'normal' person was employed in *Roth* to serve the essentially negative purpose of expressing our rejection of that aspect of the *Hicklin* test, *Regina v. Hicklin* (1868), L.R. 3 Q.B. 360, that made the impact on the most susceptible person determinative. We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group; and since our holding requires that the recipient group be defined with more specificity than in terms of sexually immature persons, it also avoids the inadequacy of the most-susceptible-person facet of the *Hicklin* test." 383 U.S. 502, 508-09, 16 L. Ed. 2d 56, 62, 86 S. Ct. 958, 963-64.

■■ It is apparent, therefore, that in including the "specially susceptible audiences" language in section 11—20a(c) the legislature intended to respond to the above-quoted holding in *Mishkin*. Hence, the only

reasonable reading of the statute in light of the *Mishkin* case is that when considering the prurient appeal of alleged obscene material (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(a)(1)(C)), the trier of fact may consider its appeal to the specially susceptible audience to which the material seems directed. However, when considering the other factors which bear on the material's obscenity, *i.e.*, the material is patently offensive and lacks serious literary, artistic, educational, political or scientific purpose or value (Ill. Rev. Stat. 1979, ch. 38, par. 11—20a(a)(1)(B), (D)), the trier of fact is to use the "ordinary adult" standard. The prime consideration in construing a statutory enactment is to give effect to the intent of the legislature. (*People v. Beam* (1979), 74 Ill. 2d 240, 242, 384 N.E.2d 1315.) In ascertaining this intent, the entire statute must be considered, and also the evil to be remedied and the object to be attained. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543, 349 N.E.2d 31.) Thus, when the statute is construed in light of the *Mishkin* case, we hold that it gives sufficient notice of the kind of conduct that is proscribed and how the statutory standards are to be applied. Further, our review of the record discloses that the trial court appropriately applied these standards in determining that the material involved in this case was in fact child pornography.

■■ Defendant's next contention is that section 11—20a is unconstitutionally vague in its use of the term "exhibit." Defendant contends that it is unclear whether the statute prohibits the private exhibition of child pornography or whether only commercial exhibition of such matter is forbidden. As noted previously, we believe that the legislative intent to prohibit both the private and commercial exhibition of child pornography is clear. When called upon to decide a vagueness question, a court will assume, absent contrary legislative intent, that the words of the statute have their ordinary and popularly understood meaning. (*People v. Schwartz* (1976), 64 Ill. 2d 275, 280, 356 N.E.2d 8; *Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 510, 140 N.E.2d 698.) Ordinary English usage of the word "exhibit" includes both notions of private and public display. Webster's New Collegiate Dictionary defines exhibit as follows:

> "*vt* 1: to present to view: as a: to show or display outwardly esp. by visible signs or actions
> * * *
> c: to show publicly esp. for purposes of competition or demonstration"

(Webster's New Collegiate Dictionary 401 (1977).)

Accordingly, since the commonly understood meaning of the word "exhibit" implies both public and private displays, the statute is not vague and defendant was properly prosecuted thereunder.

■■ Defendant's final contention is that section 11—20a is unconstitutionally vague in its definition of child pornography. Defendant relies on the

dissent in *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628, in which Justice Brennan expressed the view that none of the Supreme Court's previous definitions of obscenity reduced vagueness "to a tolerable level" and that the Supreme Court was "manifestly unable to describe it in advance except by reference to concepts so elusive that they fail to distinguish clearly between protected and unprotected speech." (413 U.S. 49, 84, 37 L. Ed. 2d 446, 473, 93 S. Ct. 2628, 2647-48 (Brennan, J., dissenting).) However, the definition of child pornography contained in section 11—20a incorporates those essential elements of obscenity articulated by the Supreme Court in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607. In *Miller*, the court articulated its latest definition of obscenity in the following manner:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, at 230, [33 L. Ed. 2d 312,] quoting *Roth v. United States, supra*, at 489, [1 L. Ed. 2d 1498]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.)

Since section 11—20a clearly incorporates these standards, defendant's contention that the statute is unconstitutionally vague must be rejected. (See *Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085.) Justice Brennan's dissenting view in *Slaton,* which was reiterated again in *Miller*, was, of course, not the majority opinion, and cannot be regarded as authoritative. *People v. O'Neil* (1974), 25 Ill. App. 3d 227, 230, 323 N.E.2d 7.

Accordingly, since we find no constitutional infirmity with the statute under which defendant was prosecuted, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.