UNITED STATES of America, Plaintiff,

v.

Calvin Dean REEDY, Defendant.

No. CR–85–224–W.

United States District Court,
W.D. Oklahoma.

April 16, 1986.

William S. Price, U.S. Atty., Arelene J. Joplin, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff.

Stephen Jones, Enid, Okl., for defendant.

## AMENDED ORDER

LEE R. WEST, District Judge.

Calvin Dean Reedy (Reedy) states in his briefs that Reedy photographed his daughter and her girl friend in the nude for the educational purpose of informing the girl friend's mother that her daughter was inclined to expose herself and had in fact exposed herself to others in the neighborhood. *See Freeman v. Com.*, 223 Va. 301, 288 S.E.2d 461, 463 (1982) (similar defense raised by defendant indicted with violation of similar state law). These photographs are the basis for Reedy's indictment, which charges him with two (2) counts of sexual exploitation of children in violation of 18 U.S.C.A. § 2251(a) (West Supp. 1984–1985) (Section 2251(a)). Reedy has moved to dismiss this indictment because he contends Section 2251(a)[1], as defined by Section 2255[2], is void for vagueness and First Amendment overbreadth. This Court finds that Section 2251(a), as defined by Section 2255, is *not* substantially overbroad nor unconstitutionally vague.

### Background

Statutes, such as Section 2251(a), which prohibit visual depictions of minors engaging in sexually explicit conduct, are premised upon the prevention of harm to minors visually depicted. The emphasis is upon prohibiting child abuse as opposed to censoring obscenity. Such statutes are supplemental to other statutes readily applicable to activities associated with child por-

1. 18 U.S.C.A. § 2251(a) reads as follows:
"Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (c), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed."

2. 18 U.S.C.A. § 2255 reads as follows:

For the purpose of [Chapter 110—Sexual Exploitation of Children], the term—(1) 'minor' means any person under the age of eighteen years; (2) 'sexually explicit conduct' means actual or simulated—(A) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic or masochistic; abuse; or (E) *lascivious exhibition of the genitals or pubic area of any person;* (3) 'producing' means producing, directing, manufacturing, issuing, publishing, or advertising and (4) 'organization' means a person other than individual. (emphasis supplied).

nography such as rape, incest, sodomy, child abuse and neglect, contributing to the delinquency of a minor, indecent exposure and obscenity. These other statutes are somewhat limited because some impose liability upon parents and guardians only, have relatively weak penalty provisions, outlaw physical abuse only, and are not only difficult to prosecute, but also low on the priority status of prosecutions in general.[3] In comparison the Child Protection Act of 1984, 18 U.S.C.A. §§ 2251–2255 (West 1984) (the federal child pornography law), regulates interstate child pornography activities, imposes liability upon coercers, producers, distributors, parents and guardians and provides for a fine of not more than $100,000.00 for an individual's first offense, not more than $250,000.00 for an organization and/or imprisonment for not more than ten years for a first offense and forfeiture of any property or proceeds obtained, used or produced.

The federal child pornography law has been in effect since February of 1978 and was amended in 1984 by Congress relying upon the following findings:

(1) Child pornography has developed into a highly organized, multi-million-dollar industry which operates on a nationwide scale;

(2) thousands of children including large numbers of runaway and homeless youth are exploited in the production and distribution of pornographic materials; and

(3) the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society.

S.R.Rep. No. 438, 95th Cong., 2nd Sess. (1978), *reprinted* in 1978 U.S.Code Cong. & Ad.News 40, 41–54. Section 2251(a) is generally directed towards four groups: (1) coercers; (2) producers; (3) parents; and, (4) distributors. Coercers may be limited to those persons who locate minors and entice them for the purpose of producing the visual material. A coercer may also be a producer, one who photographs or directly uses minors for the purpose of producing the visual material. A distributor may be a seller of such material or one who otherwise trades in passing such material to another. A parent can be anyone of these.

The prima facie case under Section 2251(a) requires the prosecution to prove beyond a reasonable doubt:

(a) a person employed, used, persuaded, induced, enticed or coerced

(b) a minor

(c) to engage in or to assist another person to engage in

(d) sexually explicit conduct

(e) for the purpose of producing a visual depiction of such conduct

(f) the person knew or had reason to know the visual depiction would be transported in interstate or foreign commerce or mailed

(g) or such visual depiction was transported in interstate or foreign commerce or mailed.

A "minor" is defined by Section 2255(1) as any person under the age of eighteen years of age. "Sexually explicit conduct" is defined by Section 2255(2) as actual or simulated (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic or masochistic; abuse; or (E) lascivious exhibition of the genitals or pubic area of any person.

### Constitutional Issues

Reedy challenges the constitutionality of Section 2251(a), as defined by Section 2255, upon the grounds of vagueness and overbreadth. The concept that a statute is facially vague, and thus void, rests upon Fifth Amendment procedural due process, which requires adequate notice of prohibited conduct and standards of adjudication. Overbreadth, on the other hand, rests upon Fifth Amendment substantive due process,

---

**3.** S.R. No. 438, 95th Cong., 2nd Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 40, 41–54; *See generally* Comment, Child Pornography Legislation, 12:2 U.Mich.J.L.Ref. 295, 302–04 (1979).

which forbids prohibition of certain constitutionally guaranteed freedoms. In response to a facial challenge [4] to a law upon the grounds of overbreadth and vagueness, "a court's first task is to determine whether the law reaches a *substantial* amount of constitutional conduct." [5] *Hoffman Estates v. Flipside,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, *reh. den.* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982), *on remand* 688 F.2d. 842 (7th Cir. 1982) (emphasis supplied).

## Overbreadth

In order to demonstrate substantial overbreadth Reedy may present every allegedly overbroad application of Section 2251(a) for this Court's consideration. He is not limited to proving overbreadth upon the particular facts surrounding his indictment. Although a person is normally limited to proving his contentions based upon the facts at issue, one is not so limited upon a claim of First Amendment overbreadth for two reasons (1) the sensitive nature of protected expression and (2) the need to consider whether persons, whose expression is constitutionally protected, may well refrain from exercising their rights for fear of criminal sanctions [6]. *See generally New York v. Ferber,* 458 U.S. 747, 768, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, *on remand* 57 N.Y.2d 256, 455 N.Y.2d 582, 441 N.E.2d 1100 (1982) (citing

*Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73, *reh. den.* 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980); *Gooding v. Wilson,* 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972) (similar argument made)).

This Court's analysis of the overbreadth issue *sub judice* tracks that of the United States Supreme Court in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). In *Ferber* the question presented to the Supreme Court was
> "To prevent the abuse of children who are made to engage in sexual conduct for commercial purposes, could the New York State Legislature, consistent with the First Amendment, prohibit the *dissemination* of material which shows children engaged in sexual conduct, regardless of whether such material is obscene?"

*Id.* at 753, 102 S.Ct. at 3352. The question presented in *Ferber* makes it clear that the analysis in *Ferber* was applied to prohibitions against dissemination of visual depictions of minors engaging in or assisting in sexually explicit conduct. Regulations governing activities of distributors of child pornography may be viewed with greater constitutional scrutiny than those regulating activities of coercers and producers, because the latter are considered to regulate primarily conduct and only incidentally

4. A "facial" challenge means a claim that the law is "invalid *in toto*—and therefore incapable of any valid application." *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974).

5. "In making that determination, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment. To this extent the vagueness of the law affects overbreadth analysis." *Hoffman Estates,* 455 U.S. at 494 n. 6, 102 S.Ct. at 1191 n. 6.

6. "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982) (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973); *United*

*States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960); *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 513, 57 S.Ct. 868, 874, 81 L.Ed. 1245 (1937); *Yazoo & M.V.R. Co. v. Jackson Vinegar Co.,* 226 U.S. 217, 219-220, 33 S.Ct. 40, 41, 57 L.Ed. 193 (1912)). This Art. III limit upon the jurisdiction of federal courts is grounded upon "two cardinal principles of constitutional order: the personal nature of constitutional rights, *McGowan v. Maryland,* 366 U.S. 420, 429, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961), and prudential limitations on constitutional adjudication." *Ferber,* 458 U.S. at 767, 102 S.Ct. at 3360. The purpose for such a practice is to allow courts the opportunity to construe a law to avoid constitutional infirmities. *Id.,* 366 U.S. at 768, 102 S.Ct. at 3360. The one exception to this practice occurs when a law is claimed to be overbroad and prohibits expression protected by the First Amendment. This exception allows Reedy to make his overbreadth claim herein.

speech. *People v. Folk,* 109 Misc.2d 738, 440 N.Y.S.2d 984 (1981); *Payne v. Com,* 623 S.W.2d 867, 871–72 (Ky.1981), *cert. den.* 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982); *see also United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968) (discusses concept limitless variety of conduct cannot be labeled "speech"). Nevertheless, the *Ferber* analysis is instructive to this Court with regard to the issues presented by Reedy.

The *Ferber* "case arose when Paul Ferber, the proprietor of a Manhattan bookstore specializing in sexually oriented products, sold two films to an undercover police officer." *Id.* 458 U.S. at 751–52, 102 S.Ct. at 3351–52. The films consisted almost exclusively of depictions of young boys masturbating. *Id.* at 753, 102 S.Ct. at 3352. Ferber was indicted on two counts of violating N.Y. Penal Law § 263.10, which prohibits dissemination of obscene material, and two counts of violating N.Y. Penal Law § 263.15 (Section 263.15)[7], the New York law controlling dissemination of child pornography that *does not* require proof of obscenity. Reversing the New York Court of Appeals decision,[8] which held Section 263.15 violated the First Amendment, the United States Supreme Court held Section 263.15, does not violate

the First Amendment as applied to the states through the Fourteenth Amendment because (a) states are entitled to greater leeway in regulation of pornographic depictions of children; (b) Section 263.15 describes a category of material that is unprotected; and, (c) the overbreadth of Section 263.15 is not substantial and "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly may not be applied." *Ferber,* 458 U.S. at 773–74, 102 S.Ct. at 3363–64 (citing *Broadrick,* 413 U.S. at 615–16, 93 S.Ct. at 2917–18). For similar reasons, Section 2251(a) is not overbroad.

The Supreme Court identified the following five reasons for holding states are entitled to greater leeway in regulating child pornography as opposed to obscenity: (1) legislative judgment that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child, easily passes muster under the First Amendment;[9] (2) the guideline defined in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, *reh. den.* 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973), for determining what is legally obscene is not a satisfactory solution to the child pornography problem;[10] (3) the advertising and sell-

---

**7.** "A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than sixteen years of age." N.Y.Penal Law § 263.15 (McKinney 1980).

**8.** After a jury trial Ferber was acquitted on the two counts under Section 263.10 and convicted on the two counts under Section 263.15. Ferber's convictions were affirmed without opinion by the Appellate Division of the New York State Supreme Court. 74 App.Div.2d 558, 424 N.Y. S.2d 967 (1980). The New York Court of Appeals reversed, holding Section 263.15 violated the First Amendment. 52 N.Y.2d 674, 439 N.Y. S.2d 863, 422 N.E.2d 523 (N.Y.1981). The New York Court of Appeals found Section 263.15(1) could not be construed to include an obscenity standard; (2) was underinclusive because it discriminated against visual portrayals of children engaging in sexual activity but did not also prohibit the distribution of films of other dangerous activity; and, (3) was overbroad because

it prohibited the distribution of materials produced outside the state, as well as materials, such as medical books and educational sources, which "deal with adolescent sex in a realistic but nonobscene manner." 52 N.Y.2d at 681, 439 N.Y.S.2d at 866, 422 N.E.2d at 526.

**9.** *Ferber,* 458 U.S. at 756–58, 102 S.Ct. at 3354–55. In so holding, the Supreme Court stated that "a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" *Ferber,* 458 U.S. at 756–57, 102 S.Ct. at 3354–55 (citing, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)). This holding was based upon findings by the Supreme Court that relevant literature confirmed "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber,* 458 U.S. at 758, 102 S.Ct. at 3355.

**10.** *Ferber,* 458 U.S. at 759–61, 102 S.Ct. at 3355–57. According to the Supreme Court, "the question under the *Miller* test of whether a work,

ing of child pornography provide an economic motive for and are thus an integral part of production of such materials, an activity illegal throughout the Nation;[11] (4) the value of permitting live performances and photographic reproductions of children engaged in lewd exhibitions is exceedingly modest, if not *de minimus*[12]; and (5) recognizing and classifying child pornography as a category of material outside the First Amendment's protection is not incompatible with the Supreme Court's decisions dealing with what speech is unprotected.[13]

■ Reedy challenges Section 2251(a) upon the ground of overbreadth primarily because Section 2251(a) prohibits more than obscene visual depictions. For the reasons outlined above, the Supreme Court in *Ferber* squarely held that states may prohibit more than obscene visual depictions of minors engaging or assisting in sexually explicit conduct. Moreover, the clear intent of Congress in enacting the federal child pornography law and amending it in 1984 was to prohibit more than obscene visual

depictions of minors engaging or assisting in sexually explicit conduct. For example, Congress substituted the word "lewd" with the word "lascivious" regarding the kind of exhibition of the genitals prohibited by Section 2251(a), in order to clarify "that an exhibition of a child's genitals does not have to meet the obscenity standard to be unlawful." 130 Cong.Rec. S3511 (daily ed. March 30, 1984) (statement of Sen. Spector). Thus, there can be no doubt Congress intended to remove even the hint that the obscenity standard is a part of Section 2251(a).

Nevertheless, Reedy contends Section 2251(a)'s prohibition against more than obscenity impermissibly broadens the statutory proscription to include a substantial amount of expression protected by the First Amendment. The expression prohibited by Section 2251(a) is not protected by the First Amendment. *Ferber* makes it quite clear that the statutorily proscribed material, is without First Amendment protection because its production and distribu-

---

taken as a whole, appeals to the prurient interest of the average person, bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work." *Id.* at 761, 102 S.Ct. at 3356 (emphasis supplied). Rejecting this limitation of the obscenity standard, the Supreme Court noted an additional problem in using the *Miller* standard was that it "is a function of 'contemporary community standards.'" *Ferber,* 458 U.S. at 761 n. 12, 102 S.Ct. at 3357 n. 12. Consequently, the restrictions would be subject to differences from community to community. *Id.* The Supreme Court found it "unrealistic to equate a community's toleration for sexually oriented material with the permissible scope of legislation aimed at protecting children from sexual exploitation." *Id.*

11. *Ferber,* 458 U.S. at 761–62, 102 S.Ct. at 3356–57. "In this connection [the Supreme Court] note[d] that 18 U.S.C. § 2251 (1976 ed., Supp. IV), making it a federal offense for anyone to use children under the age of 16 in the production of pornographic materials, embraces all 'sexually explicit conduct' without imposing an obscenity test." *Id.* at 762 n. 15, 102 S.Ct. at 3357 n. 15. This note may indicate that regulation merely aimed at producers and coercers would not effectively deter child abuse. This reference to Section 2251 by way of a note is the only direct reference in the *Ferber* opinion to the Section at issue herein.

12. *Ferber,* 458 U.S. at 762–63, 102 S.Ct. at 3357–58. "[a] work which, *taken on the whole,* contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography." *Id.* at 761, 102 S.Ct. at 3357 (emphasis supplied). The same theme may be depicted by use of a person over the statutory age who looks younger or through a non-visual or non-photographic medium.

13. *Ferber,* 458 U.S. at 763–64, 102 S.Ct. at 3357–58. Content determines whether speech is protected. *Id.* at 763, 102 S.Ct. at 3357 (citing, *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 66, 96 S.Ct. 2440, 2450, 49 L.Ed.2d 310, *reh. den.* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976) (zoning and licensing regulations regarding adult theaters are permissible); *F.C.C. v. Pacifica Foundation,* 438 U.S. 726, 742–48, 98 S.Ct. 3026, 3036–40, 57 L.Ed.2d 1073, *reh. den.* 439 U.S. 883, 99 S.Ct. 227, 58 L.Ed.2d 198 (1978) (FCC may regulate broadcasts of patently offensive words dealing with sex and excretion, such as the Carlin "Filthy Words" monologue in particular where exposure to children is possible); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (city may regulate public expression of any offensive, derisive or annoying word directed to another lawfully in any street or public place)).

tion "bears so heavily and pervasively upon the welfare of children engaged in its production." *Ferber*, 458 U.S. 764–65, 102 S.Ct. at 3358–59. Therefore, this Court is compelled to find against Reedy's contention that Section 2251(a) is impermissibly overbroad.

In *Ferber*, the Supreme Court relaxed or broadened the three elements of obscenity, as set out in *Miller*, in order to give some guidelines as to what more than obscenity may be prohibited by child pornography laws. The standard for obscenity, as set out in *Miller*,[14] is as follows: a trier of fact must find

(1) an average person, applying contemporary community standards would find the work taken as a whole, appeals to the prurient interests;

(2) the sexual conduct protrayed is done in a patently offensive way; and,

(3) the material, taken as a whole, lacks serious literary, artistic, political or scientific value.

The Supreme Court adjusted the *Miller* test in *Ferber*, in order to provide the standard for determining whether a visual depiction of a minor is without First Amendment protection and a violation of Section 2251(a) as follows: a trier of fact must find

(1) the individual visual depiction, in isolation, appeals to the prurient interest of some person;

(2) the sexual conduct protrayed is either patently or latently offensive; and,

(3) the individual visual depiction, in isolation, lacks serious literary, artistic, political or scientific value.

*Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358. In essence the *Ferber* test allows visual depictions of minors to be adjudged by the effect of an isolated excerpt upon particularly susceptible persons. *cf. Roth v. United States*, 354 U.S. 476, 488–89, 77 S.Ct. 1304, 1310–11, 1 L.Ed.2d 1498 (rejects such a standard in the context of obscenity).

Throughout his briefs and the evidentiary hearing held upon this motion, Reedy has expressed great concern that Section 2251(a) prohibits production of, among others, photographs such as those to be incorporated in pediatric medicine texts, sculptures such as Donatello's David, and lithographs such as Picasso's "The Old Artist in the Studio."[15] This Court is not able to make any specific findings with regard to such items of evidence because for many there has been no testimony as to the age of the child depicted, whether a child was involved in the production of the item, and whether the depiction satisfies the *Ferber* test. Without specifically so holding as to any particular item of evidence introduced by Reedy, this Court finds in general many, if not most, of these items would not be prohibited by the *Ferber* test. In any event, this Court is compelled by the precedent rendered in *Ferber* to find that the legitimate reach of Section 2251(a) outweighs its arguably impermissible applications.

Reedy further contends Section 2251(a) is overbroad because it (1) fails to include a scienter requirement; (2) describes a minor as under the age of eighteen, as opposed to under the age of sixteen; and, (3) prohibits production and coercion for both commercial and non-commercial purposes, as opposed to commercial only. Each of these challenges arises because Section 2251(a) may be distinguished in these ways from the statute at issue in *Ferber*. This Court will address each of these contentions individually.

**14.** 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973).

**15.** Other items entered into evidence included: Charis Wilson, *Edward Weston: Nudes,* plate 26 (Aperture Books, New York, 1977); S. Waxman, *Growing Up Feeling Good,* 30 and 34 (Panjandrum/Aris Books, Los Angeles, 1980); S. Waxman, *What Is A Girl, What Is A Boy,* 26 and 126–27 (Peace Press); P. Webb, *The Erotic Arts,* 238–40 (Little Brown and Co., N.Y.1975); Goldstein, *The Sex Book* (Herderand Herder, N.Y., 1971); W. McBride, H. Fleischbauer-Herdt, *Show Me* (St. Martin's Press, N.Y., 1974); Fast Times At Ridgemont High (Universal Studios, 1982); The Exorcist (Warner Brothers Studios, 1973); The Blue Lagoon (Columbia Pictures, 1980); Slide of the "Sleeping Satyr" (the so-called Barberini Faun) Hellenistic Greek sculpture c. 200 B.C., Munich Museum.

■ Reedy's contention that the federal child pornography law lacks a scienter requirement is not persuasive. The necessity of some element of scienter is adequately provided for by Section 2251(a), which requires a prosecutor to prove (1) defendant acted in the proscribed manner for the purpose of producing any visual depiction of sexually explicit conduct and (2) knew or had reason to know such visual depiction would be transported in interstate or foreign commerce or mailed, unless (3) it has actually been so transported. The fact that Section 2251(a) does not require scienter as to some elements does not make it unconstitutionally flawed.[16]

■ Reedy contends Section 2251(a) is constitutionally flawed because it lacks a requirement that the defendant knew the character and content of the visual depiction to be produced or produced. In essence Reedy contends Section 2251(a) imposes strict liability. Criminal statutes that impose strict liability are generally disfavored. *Liparota v. United States,* — U.S. ——, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985), *remanded without op.* 774 F.2d 1166 (7th Cir.1985). Section 2251(a), however, is not a strict liability statute. It requires that a defendant act with the purpose of producing a visual depiction of sexually explicit conduct. It is, therefore, implied the defendant must know the character and content of the visual depiction.[17] Otherwise how could the

defendant purposefully make a visual depiction of sexually explicit conduct.

On the other hand, the federal child pornography law does not require that a defendant intend to or knowingly employ, use, persuade, induce, entice or coerce a child below eighteen years of age. In its recent decision in *Liparota,* the Supreme Court has stated that the decision as to the specific mental state required for any particular federal criminal offense is "entrusted to the legislature."[18] Therefore, this Court must look to the legislative history concerning Section 2251(a) to determine whether a defendant need to intend that a minor be or know a minor was involved.

The question before the Supreme Court, in *Liparota,* was whether the statute, which was ambiguous as to the required mental state, should be construed to include knowledge as an essential element. Although the Supreme Court recognized the need to determine legislative intent regarding the required mental state, they were unable to find any indication of the legislative intent. Therefore, the Court had to resort to principles of law to resolve the ambiguity in construing the statutory language. The Supreme Court applied the rule of lenity, a longstanding principle which requires that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." 105 S.Ct. at 2089 (citations omitted). As a result, knowledge was interpreted to be an essen-

---

**16.** The state of mind required of an actor may differ from element to element. *United States v. Bailey,* 444 U.S. 394, 405–06, 100 S.Ct. 624, 632–33, 62 L.Ed.2d 575 (1980), *on remand* 675 F.2d 1292, *cert. den. Walker v. United States,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). Here the act of employing, etc., the minor must be done for the purpose of making the proscribed visual depiction. The final element does not require purpose but only knowledge or reason to know the material will be transported or mailed or if the material is actually transported or mailed imposes strict liability. Generally, " 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent.' " *Bailey,* 444 U.S. at 405, 100 S.Ct. at 632; *see generally Bailey,* 444 U.S. at 403–06, 100 S.Ct. at 631–33 (discussion distinction between purpose and knowledge); *accord*

W. LaFave & A. Scott, Criminal Law, 191–204 (1972).

**17.** The Model Penal Code recognizes four mental states, purpose, knowledge, recklessness, and negligence. ALI Model Penal Code § 2.02 (Prop.Off. Draft 1962). From purpose to negligence the scope of activities meeting the standard for the mental state or *mens rea* increases. Because a defendant must act with a specific purpose to produce a visual depiction of sexually explicit conduct, actions taken with mere knowledge, recklessness or negligence are not prohibited.

**18.** Of course the Supreme Court noted "Congress must act within any applicable constitutional constraints in defining criminal offenses." — U.S. ——, 105 S.Ct. at 2087 n. 6.

tial element of the statutory offense at issue in *Liparota.*

■ "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Id.*[19] Nevertheless, application of the rule of lenity, which is essentially what Reedy requests, in the instant case would not be appropriate. The rule of lenity should not be applied where to do so would conflict with the implied or express intent of Congress, such as in this case. *Id.*

■ Legislative history concerning Section 2251(a) expressly states "it is not a necessary element of a prosecution that the defendant knew the actual age of the child." H.R.Rep. No. 811, 95th Cong., 1st Sess. 5 (1977); *see also* H.R.Rep. No. 696, 95th Cong., 1st Sess. 12 (1977), 1978 U.S. Code Cong. & Ad.News, 69. In this regard Section 2251(a) is similar to the Mann Act, which the Court of Appeals for the Third Circuit has held to be without such an element. *United States v. Hamilton,* 456 F.2d 171 (3d Cir.) *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972). In deference to legislative intent and because this Court finds no constitutional requirement that knowledge of the victim's age is a necessary element of a prosecution, this Court rejects Reedy's contention to the contrary.

■ Reedy also contends that, unlike Section 263.15 in *Ferber,* Section 2251(a) is substantially overbroad because it includes sixteen and seventeen year olds in its definition of minor. Apparently, Congress adopted the 1984 amendment, which increased the age of a minor from under 16 years of age to under 18 years of age, because prosecution is often based solely upon the pornography itself and expert testimony with regard to the same since the depicted child cannot be located. H.R.Rep. No. 536, 98th Cong. 2nd Sess. (1984), *re-*

*printed in* 1984 U.S.Code Cong. & Ad. News 492, 494. Taking legislative intent into consideration and given that children mature mentally and emotionally at different rates of speed, this Court finds the flat age level of eighteen in keeping with the compelling interest of protecting children from sexual abuse or harm. Moreover, the Court notes the older the child to be depicted, the more readily a person over the statutory age could be utilized.

■ Finally, as part of his overbreadth claim, Reedy contends the federal child pornography law is substantially overbroad because, unlike the statute at issue in *Ferber,* it includes a prohibition against noncommercial as well as commercial material. Of the various 1984 amendments to the federal child pornography law, one amendment removed the requirement that the prohibited material be produced "for pecuniary profit." A discussion of the reasons for removing reference to profit is found in H.R.Rep. No. 536, 98th Cong. 2nd Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 492, 493–94:

> Perhaps the most important limitation in [the] existing law is the "commercial purpose" limitation. Utilization of 18 U.S.C. Section 2252 has been inhibited by that statute's limited application to the distribution of child pornography only for commercial purposes ("for the purpose of sale or distribution for sale"). Many of the individuals who distribute materials covered by 18 U.S.C. Section 2252 do so by gift exchange without any commercial motive and thus remain outside the coverage of this provision. Those persons who use or entice children to engage in sexually explicit conduct for the purpose of creating child pornography do not violate 18 U.S.C. Section 2251 unless their conduct is for pecuniary profit.... Since the harm to the child exists whether or not those who initiate or carry out the schemes are motivated by profit, the Subcommittee found a need to expand

---

**19.** *Liparota* cites *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) in support of this point, wherein it was stated "because of the seriousness of criminal

penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity."

the coverage of the Act by deleting the commercial purpose requirement.

For similar reasons, state courts have found that state statutes prohibiting child pornography need not require a commercial purpose. *Dannelley v. State*, 397 So.2d 555, 568–71 (Ala.Crim.App.), *cert. den.* 397 So.2d 577 (Ala), *cert. den.* 454 U.S. 856, 102 S.Ct. 305, 70 L.Ed.2d 151 (1981); *People v. Spargo*, 103 Ill.App.3d 280, 59 Ill.Dec. 8, 11–13, 431 N.E.2d 27, 30–32 (1982).

The discussions in support of the 1984 amendments to the federal child pornography law make it clear that Congress intended to prohibit both commercial and non-commercial material. Reedy has not produced sufficient evidence to persuade this Court that prohibition of non-commercial, as well as commercial, material impermissibly and substantially increases the breadth of Section 2251(a) so as to make it unconstitutionally overbroad. This finding is particularly so given that the material must meet the *Ferber* test in order to be prohibited.

In conclusion, with regard to the potential overbreadth of Section 2251(a), Reedy has failed to produce evidence that whatever overbreadth exists is substantial. Congress specifically intended and amended the federal child pornography law to exclude an obscenity requirement, exclude a scienter requirement as to some elements, include 16 and 17 year olds and include not-for-profit materials. Legislative intent and the Supreme Court's decision in *Ferber*, compel this Court to find Section 2251(a) is "not substantially overbroad and whatever overbreadth may exist should be cured through case-by-case analysis of fact situations to which its sanctions, assertedly, may not be applied." *Ferber*, 458 U.S. at 773–74, 102 S.Ct. at 3363–64 (citing *Broadrick v. Oklahoma*, 413 U.S. at 615–16, 93 S.Ct. at 2917–18); *accord State v. Jordan*, 665 P.2d 1280 (Utah 1983), *app dismd. Fuller v. Utah*, 464 U.S. 910, 104 S.Ct. 266, 78 L.Ed.2d 249 (1983).

### Vagueness

As stated earlier vagueness is a constitutional vice conceptually distinct from overbreadth. Therefore, the fact that Reedy's overbreadth challenge is found without merit is not dispositive of his challenge that Section 2251(a) lacks clarity. Nevertheless, this Court finds Section 2251(a) is not unconstitutionally vague.

Generally, as a matter of due process, a law is void on its face if persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974). Constitutional notions of due process require laws to give "fair notice of what to avoid, and that the discretion of law enforcement officials, with the attendant dangers of arbitrary and discriminatory enforcement, be limited by explicit legislative standards." L. Tribe, *American Constitutional Law*, 718 (1978). In the First Amendment area, however, vagueness need not depend upon absence of fair notice. "The first amendment's demand for specificity is also a product of the concern for a statute's chilling effect.... As a consequence, the Supreme Court requires more specificity of a statute potentially applicable to expression sheltered by the first amendment than in other contexts, although no doctrinal formulation of the required increment in specificity has seemed possible." Tribe, *supra* at 719 (citing *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974)).

In *Ferber*, although vagueness was not at issue for purposes of avoiding overbreadth, the Supreme Court found Section 263.15 adequately defined the material without First Amendment protection because (1) it was limited to materials that *visually* depict sexual conduct by children below a specified age; (2) the definition of sexual conduct taken in light of the adjusted *Miller* formulation was suitably limited and described; and, (3) it expressly included a scienter requirement. *Ferber*, 458 U.S. at 764–65, 102 S.Ct. at 3358–59; *see also United States v. Fogarty*, 663 F.2d 928, 929 (9th Cir.1981) (Section 2252 found not unconstitutionally vague). Similarly, this Court finds Section 2251(a) is suitably limited when interpreted in light of the

*Ferber* adjustments to the *Miller* test. This is true despite Reedy's contention that the use of "lascivious" as opposed to "lewd" to modify the kind of "exhibition of the genitals" prohibited makes Section 2251(a) unconstitutional and distinguishable from Section 263.15, which was at issue in *Ferber.*

In *Roth v. United States,* a case involving the First Amendment and a vagueness challenge, Justice Brennan recognized that the terms "obscene, lewd, lascivious, or filthy" are not precise. 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 498, *reh. den.* 355 U.S. 852, 78 S.Ct. 8, 2 L.Ed.2d 60 (1957). Nevertheless, he stated that

> "lack of precision is not itself offensive to the requirements of due process. 'The Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *United States v. Petrillo,* 332 U.S. 1, 7–8 [67 S.Ct. 1538, 1541–42, 91 L.Ed. 1877]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark boundaries sufficiently distinct for judges and juries to administer the law. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no [sic] sufficient reason to hold the language too ambiguous to define a criminal offense."

354 U.S. at 491–92, 77 S.Ct. at 1312–13. (citing *United States v. Harriss,* 347 U.S. 612, 624 n. 15, 74 S.Ct. 808, 815 n. 15, 98 L.Ed. 989 (1954)); *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); *United States v. Ragen,* 314 U.S. 513, 523–24, 62 S.Ct. 374, 378–79, 86 L.Ed. 383 (1942);

*United States v. Wurzback,* 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930); *Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925); *Fox v. Washington,* 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 (1915); *Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); *see also United States v. Nemuras,* 567 F.Supp. 87, 89–90 (D.C.Md.1983), *aff.* 740 F.2d 286 (4th Cir.1984) (prior to amendment in 1984, section 2251 found not unconstitutionally vague); *State v. Limpus,* 128 Ariz. 371, 625 P.2d 960, 964 (Ct.App.1981) (term "lewd and lascivious" sufficiently definite); *Whaley v. State,* 556 P.2d 1063, 1065 (Okla.Crim.App.1976) ("lewd or lascivious manner" not unconstitutionally vague); *cf. Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 84–93, 93 S.Ct. 2628, 2647–2652, 37 L.Ed.2d 446 (1973) (Brennan, J. dissenting). Moreover, the Supreme Court has noted just because juries may reach different conclusions as to the same material, that does not mean due process is not satisfied. *Roth,* 354 U.S. at 492 n. 30, 77 S.Ct. at 1313 n. 30. Therefore, Reedy's evidence that different people have different definitions for lascivious does not mean the use of the word lascivious makes Section 2251(a) unconstitutionally vague.

Section 2251(a), when measured by common understanding and practices and applied according to the *Ferber* standard,[20] gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to administer the federal child pornography law. That there may be marginal cases requiring close scrutiny of the facts, is not sufficient reason to find Section 2251(a) unconstitutionally vague. *Roth,* 354 U.S. at 491, 77 S.Ct. at 1312. Therefore, this Court finds Section 2251(a) is not unconstitutionally vague.

---

**20.** Reedy contends Section 2251(a) is vague because lascivious is no more than a synonym for lewd which is a synonym for obscene. This Court recognizes the words are often used in a similar fashion. Nevertheless, in connection with the federal child pornography law, Congress intended to use lascivious to describe something more than obscenity. Therefore, when lascivious exhibition of the genitals is adjudged in light of the *Ferber* standard for what more than obscenity may be prohibited in the area of child pornography, lascivious has a distinct legal definition aside and apart from obscenity.

*Conclusion*

It cannot be overemphasized Congress and the Supreme Court have found the class of material prohibited by laws such as the federal child pornography law bear so heavily and pervasively on the welfare of children engaged in the production of such material that the delicate balance of competing interests is clearly struck and it is permissible to consider such materials as without the protection of the First Amendment. *Ferber,* 458 U.S. at 764, 102 S.Ct. at 3358. Therefore, this Court is constrained to find Reedy's overbreadth and vagueness challenges to the federal child pornography law are not supported by sufficient evidence nor reason to strike the federal child pornography law and allow those who exploit the sacred trust of children to raise the shield of the First Amendment.

This Order amends the Order of January 8, 1986.