**STATE of Iowa, Appellee,**

v.

**John Robert SPARGO, Appellant.**

No. 83–702.

Supreme Court of Iowa.

March 20, 1985.

Rehearing Denied April 15, 1985.

Jon M. Kinnamon, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Sherie Barnett, Asst. Atty. Gen., and James L. Ottesen, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

McGIVERIN, Justice.

Defendant John Robert Spargo appeals from his conviction for assault with intent to commit sexual abuse in violation of 1981 Iowa Acts, chapter 204, section 6, which now appears as Iowa Code section 709.11 (1983). We affirm.

On appeal, defendant contends: (1) that his motion for change of venue should have been granted because of prejudicial pretrial publicity; (2) that testimony offered by the State regarding prior sex acts of defendant should have been ruled inadmissible; (3) that there was insufficient evidence to convict defendant of the crime of assault with intent to commit sexual abuse; and (4) defendant's two requested jury instructions on specific intent to commit a sex act and intent to offend should have been submitted to the jury. We find no merit in any of these contentions.

The record shows that in December 1982 Bettendorf police were advised that defendant had been frequenting the city's public library with three young boys. The police were concerned about the nature of defendant's relationship with the boys and contacted one of the boys (hereinafter referred to as John) and his parents in order to investigate defendant's activities.

John, who was age 14 at all material times, testified that he met defendant, age 34, while using the public library's computer and that since meeting him he had frequently gone to defendant's house on weekends to play pool and computer games. He said that on a day when he and

defendant were alone together, defendant had suggested that if he could give John sex lessons, he would also teach him about sailing, scuba diving, and water skiing.

After installing electronic surveillance equipment in John's home, the police asked him to invite defendant over to his house. In a phone conversation with defendant on January 7, 1983, John invited defendant to come over the next evening. Pursuant to the police officers' instructions, John told defendant that he would be alone and that he was interested in having defendant teach him about sex.

When defendant arrived at John's home the next evening, several police officers were concealed on the premises to observe defendant and monitor the surveillance equipment. As instructed, John led defendant to a basement family room where the two of them sat down on a couch, and proceeded to read together from a book defendant had brought, titled *Show Me*, intended to help parents educate young children about sex. During the reading, defendant and John discussed a wide range of sexual topics. Afterwards, defendant suggested to John that they go upstairs to his bedroom, but John declined. Defendant then had John lie on his back on the couch and pull his shirt up to expose his chest. Bettendorf police officer Christopher Kauffman, who was concealed in a storage closet adjacent to the family room, testified that he saw defendant massage John's chest and stomach and twice pass his hand over the groin area of John's pants. During this time defendant also told John that he loved him. At that point the police intervened and arrested defendant.

Shortly before his trial, defendant filed a motion for change of venue under Iowa R.Crim.P. 10(10)(b), alleging that because of pretrial publicity regarding the case there was a substantial likelihood that he could not receive a fair trial in Scott County or anywhere else in the seventh judicial district. The motion was denied.

Among the State's witnesses at trial was Edward Flynn, who from 1975–1980 was a senior investigator with the Illinois Legislative Investigating Commission. He testified that in 1978 he met defendant while working undercover on a child pornography investigation. Over defendant's objection, Flynn testified that he had conversations in 1978–79 with defendant over a period of several months in which defendant related his sexual activities with adolescent boys. Flynn said that defendant told him that he used his job as a sailing instructor to meet boys, and that his method for initiating sexual contacts was to invite a boy to his apartment and engage him in a philosophical discussion about life and sex and then persuade the boy to let him (defendant) teach the boy about sex.

Also over defendant's objection, Flynn testified that defendant showed him an album containing photographs of nude boys between the ages of 7 and 16 years who, defendant said, had been his sexual partners. Flynn said also that defendant identified himself as the adult in one photograph depicting genital-to-genital contact between a man and a boy approximately 13 or 14 years old. Flynn went on to describe the album as containing index cards indicating the names and ages of the boys pictured, the frequency of the "sex lesson" he had with each one, and comments about each boy's sexual traits.[1]

At the close of the State's evidence, and again at the close of all the evidence, defendant moved for a judgment of acquittal on the ground that the evidence was insufficient to sustain a conviction. Defendant's motion was overruled on both occasions.

---

1. The album itself was, on defendant's motion, excluded from evidence, as was the fact that defendant's exhibition of it to Flynn subsequently resulted in defendant's conviction in Illinois for exhibiting child pornography. *See People v. Spargo*, 103 Ill.App.3d 280, 59 Ill.Dec. 8, 431 N.E.2d 27 (1982). The jury was cautioned before Flynn's testimony and later instructed that his testimony regarding defendant's prior acts was to be considered only with regard to defendant's intent in touching John on the night of January 8, and not with respect to whether he had actually committed the acts he described to Flynn.

Defendant also submitted two requested jury instructions dealing with specific intent to commit a sex act and intent to offend. These requested instructions were not contained in the final instructions actually given to the jury.

The jury found defendant guilty of assault with intent to commit sexual abuse without causing injury to the victim, an aggravated misdemeanor. This appeal followed.

■ I. *Defendant's motion for change of venue.* Spargo contends the court erred in overruling his motion for change of venue based on pretrial publicity. He contends he was entitled to a change of venue to satisfy his due process right to a fair trial under the fourteenth amendment to the United States Constitution and the language of Iowa R.Crim.P. 10(10)(b).[2] Our review on this issue is de novo, with reversal indicated only if the trial court abused its discretion in denying the motion. *State v. Hickman,* 337 N.W.2d 512, 514 (Iowa 1983).

■ As we noted recently in *State v. Gavin,* 360 N.W.2d 817, (Iowa 1985), a defendant who seeks reversal of a conviction on the basis of denial of his motion for change of venue must show either actual prejudice on the part of the jury or must show that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed. Defendant makes no argument regarding actual jury prejudice. Instead, he contends that the pretrial publicity in this case was such as to create a presumption of prejudice. We do not agree.

Defendant was arrested on January 8, 1983. The next day a brief news article to that effect appeared in the Quad-City Times newspaper. On the following day the Times and the Des Moines Register each ran articles detailing the circumstances of the arrest. The articles also discussed defendant's prior Illinois conviction for exhibition of child pornography and the investigation preceding that conviction. The Times' evening edition of its January 10 article was headlined "Cops kept eye on sex suspect," and read in part:

On Saturday night, officers overheard Spargo attempt to talk a 14-year-old boy into engaging in sex with him. One officer hid in a room and watched Spargo "fondle or touch the boy's breasts and genitals" according to court records.

On January 11 the Times reported in a short article that defendant had pleaded innocent to the charges for which he was arrested on January 8. On January 11 the Times also published an article, which it reprinted the next day, speculating on the existence of a child pornography ring in the Quad Cities. This article mentioned that defendant had previously been convicted of a child pornography offense, but also noted that the charges then pending against him did not involve pornography.

These six articles apparently constitute the total of newspaper stories that mentioned defendant. In addition, local television and radio news shows broadcast reports on January 9, 10, and 31 concerning defendant's case and his prior Illinois conviction.

We generally agree with the State that these articles and broadcasts cannot fairly be characterized as inflammatory. Although the January 10 Quad-City Times headline and paragraph quoted above is not a model of journalistic restraint, it is relevant that neither it nor any of the other articles or broadcasts indicated that defendant was guilty of the charges against him. *See State v. Chadwick,* 328 N.W.2d

2. Iowa R.Crim.P. 10(10)(b) provides:

*Change of venue ordered.* If the court is satisfied from a motion for a change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county, the court either shall order that the action be transferred to another county in which the offensive condition does not exist, as provided in paragraph *"c",* or shall order that the trial jury be impaneled in and transferred from a county in which the offensive condition does not exist, as provided in paragraph *"d."*

913, 916 (Iowa 1983). The media accounts are factual and informative in tone and as such do not support defendant's claim that they must be presumed to have created prejudice against him. *See State v. Love,* 302 N.W.2d 115, 122 (Iowa 1981); *State v. Cuevas,* 288 N.W.2d 525, 527–28 (Iowa 1980).

■ Although it was reported several times that defendant had previously been convicted of exhibiting child pornography, it is well established that community knowledge of a defendant's prior criminal record does not create a presumption of prejudice. *See State v. Hickman,* 337 N.W.2d at 515; *State v. Johnson,* 318 N.W.2d 417, 423–24 (Iowa), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

■ Finally, we note that the last articles and broadcasts mentioning defendant appeared between two and three months before the start of his trial. We have previously stated that a time lapse of similar length was sufficient to dissipate any prejudicial effect that may have been created initially by adverse publicity. *See State v. Johnson,* 318 N.W.2d at 423 (approximately three months); *State v. Cornelius,* 293 N.W.2d 267, 269 (Iowa 1980) (two months); *State v. Pelelo,* 247 N.W.2d 221, 223 (Iowa 1976) (three months); *State v. Loney,* 163 N.W.2d 378, 382 (Iowa 1968) (eleven weeks).

Aside from the articles and broadcasts discussed above, our attention is also directed to a series of articles on the pornography trade in the Quad Cities, which was published in the Quad-City Times on March 6, an editorial condemning the North American Man-Boy Love Association which appeared in the Times on January 17, and a memorandum from an employee of a local radio station indicating that child molestation had been discussed on several occasions from January 19 to March 22, on a local radio call-in show.

In none of these articles or discussions was defendant ever mentioned, nor was any veiled reference to him ever made. These generalized comments and discussions do not establish, either alone or in conjunction with the other items, that defendant could not obtain a fair trial in Scott County. *See State v. Pelelo,* 247 N.W.2d at 223.

We conclude that the total of all the pretrial publicity of record falls short of exhibiting the extensiveness and hostility to defendant that is required to give rise to a presumption of prejudice. There was no "substantial likelihood a fair and impartial trial" could not be had in Scott County for the purposes of Iowa R.Crim.P. 10(10)(b) and there was no fourteenth amendment due process deprivation. The trial court did not abuse its discretion in overruling defendant's motion for change of venue.

II. *Admissibility of Flynn's testimony.* Defendant next contends that admission of Edward Flynn's testimony regarding defendant's prior sex acts with boys was error. Spargo objected to the evidence as being generally irrelevant and concerning activities too remote in time to be of any relevance to the present case. He further contended that in any event the probative value of the testimony was outweighed by the prejudice to him that would be generated by its admission.

■ The legal standards pertaining to this issue are well established. Evidence regarding a defendant's prior acts that is offered only to show that the defendant is a bad person, likely to have committed the crime he is presently charged with, is inadmissible. *See, e.g., State v. Cott,* 283 N.W.2d 324, 326 (Iowa 1979). But evidence of prior acts can be admitted for the purpose of showing intent, motive, the absence of mistake or accident, the identity of one charged with commission of a crime, or a common scheme of criminal activity.[3] *State v. Conner,* 314 N.W.2d 427, 429 (Iowa 1982). If evidence of prior acts is found by the trial court to be relevant to

---

**3.** Iowa Rule of Evidence 404(b), not in effect at the time of defendant's trial, now controls the admissibility of evidence of prior acts in much the same way as did the previous law.

any of these matters, then the court must also determine whether the probative value of the evidence outweighs the danger of unfair prejudice to the defendant. *Id.* The court's ruling on admissibility will not be disturbed unless it constitutes an abuse of discretion. *Id.*

In this case, Flynn's testimony was offered for the purpose of showing defendant's intent to engage in a sex act with John on January 8, 1983. The jury was cautioned and later instructed by the court that the testimony was to be considered only for that purpose. The State offered the testimony as previously detailed to show that defendant followed a certain pattern of conduct with boys, including offering "sex lessons," with the intent that sex acts would follow.

■ By pointing out the similarity between defendant's pattern of conduct toward other boys, with whom he allegedly later engaged in sex acts, and his pattern of conduct toward John, the State hoped to show that his intent with respect to John was the same as it had been with the other boys. We believe the similarity between defendant's prior pattern of conduct and the facts of this case is strong enough to justify the conclusion that the trial court did not abuse its discretion in ruling that Flynn's testimony was relevant to the issue of defendant's intent to commit sexual abuse of John. *See State v. Spaulding,* 313 N.W.2d 878, 881 (Iowa 1981); *State v. Thomas,* 275 N.W.2d 211, 215 (Iowa 1979); *State v. Fetters,* 202 N.W.2d 84, 92 (Iowa 1972).

Defendant argues that even if Flynn's testimony was relevant, its probative value was clearly outweighed by the danger of prejudice resulting from its admission. Among the points defendant makes in support of this contention is that Flynn was unable to specify the precise nature of the sex acts defendant allegedly committed, the names of his partners, or the dates and places of the acts. This, defendant maintains, violates the requirement that in order for evidence of prior acts to be admissible, such evidence must constitute "clear

proof" of the acts. *See State v. Johnson,* 224 N.W.2d 617, 620 (Iowa 1974); *State v. Fetters,* 202 N.W.2d at 92.

■ We do not believe that the "clear proof" rule precludes admission of Flynn's testimony. Commission of prior acts need not be established beyond a reasonable doubt. *See State v. Williams,* 360 N.W.2d 782, 786 (Iowa 1985); *State v. Fetters,* 202 N.W.2d at 92. The purpose of the rule is to prevent the jury from engaging in speculation or drawing inferences based on mere suspicion. *See id.; State v. Johnson,* 224 N.W.2d at 620. Flynn's testimony, though lacking in some particulars, was clear and complete enough to allow the jury to find commission of prior sex acts by defendant with children, without resorting to speculation or mere suspicion.

■ Defendant also argues that the alleged prior acts were too remote in time (three to seven years before the trial) to have probative value greater than their prejudicial effect. Remoteness in time is certainly a consideration relevant to this issue. *See State v. Spaulding,* 313 N.W.2d at 881. But it clearly is not the only consideration. Evidence of prior acts that is highly probative may be admitted even though the acts to which it pertains are remote in time. *See State v. Maestas,* 224 N.W.2d 248, 251–52 (Iowa 1974) (strongly probative evidence of prior acts admissible although alleged acts occurred six and ten years previously). In this case, the probative value of Flynn's testimony was enhanced by the physical evidence of the photo album which corroborated his testimony. Although the album was excluded from the jury's consideration, it could properly be considered by the court in determining the probative value of Flynn's testimony. *See State v. Cott,* 283 N.W.2d at 329. The trial court did not err in allowing Flynn's testimony notwithstanding the remoteness in time of the acts to which it pertained.

Defendant's contention that the trial court abused its discretion in admitting Flynn's testimony is without merit.

III. *Sufficiency of the evidence.* Defendant next contends that there is insufficient evidence to support his conviction of assault with intent to commit sexual abuse. More specifically, he asserts there was not substantial evidence that he intended to engage in a sex act with John. Defendant made timely motions for judgment or acquittal on that basis during trial, Iowa R.Crim.P. 18(8), which were overruled. Citing *State v. Baldwin,* 291 N.W.2d 337 (Iowa 1980) (evidence that defendant put his hand down the front of 12-year-old girl's shirt was insufficient to establish his intent to engage in a "sex act," as defined by statute), defendant maintains that although the record might support a finding that he touched John with a "sex-oriented purpose," there is no evidence that he intended a "sex act," within the meaning of Iowa Code section 702.17, to follow.[4]

 This contention is obviously based on the premise that Flynn's testimony with regard to defendant's intent was inadmissible. Inasmuch as that testimony was properly admissible, such evidence of defendant's pattern of prior acts with young boys that resulted in sex acts when coupled with defendant's acts toward John including running his hand over John's chest and groin area and telling him he loved him, cause us to conclude that there is sufficient evidence in the record to support a finding that defendant's intent on the night of January 8 was to engage in a sex act with John. Defendant's contention to the contrary is without merit.

IV. *Defendant's requested jury instructions.* After the close of the evidence, defendant requested the following two jury instructions:

### SPECIFIC INTENT TO COMMIT A SEX ACT

In order to convict the defendant of the offense charged, the State must prove beyond a reasonable doubt that the defendant committed an assault upon the young man with the specific intent to perform a "sex act" on the night of January 8, 1983. The definition of "sex act" is found in Instruction No. _____. If you can only find the defendant intended to fondle, caress, or otherwise merely touch the defendant with his hands for some sex-oriented purpose, but not with specific intent to perform a sex act, you must acquit the defendant.

### INTENT TO OFFEND

The fact that the young man may or may not have been offended by the defendant touching him is not to be considered in determining whether or not an assault occurred. The focus of the definition of assault is upon the defendant, not the alleged victim. To convict the defendant, the State must prove beyond a reasonable doubt that the defendant intended to offend the victim. If you find that the defendant believed the young man consented to being touched, then no assault occurred, and you must acquit the defendant.

These instructions were not given to the jury by the court. Defendant contends that denial of either requested instruction constituted error.

 A. The court's refusal to submit the first requested instruction was not error for the reason that its substance was adequately incorporated in the instructions that were given to the jury. The jury was clearly and correctly instructed that to find defendant guilty of the offense charged, it had to find that the State had proven beyond a reasonable doubt that he had committed an assault on John with the intent to commit a sex act as defined by Iowa law in other instructions. If the jury had not been satisfied as to defendant's intent to commit a sex act, it could not have convict-

---

**4.** Iowa Code section 702.17 defines "sex act" as "any sexual contact between two or more persons, by penetration of the penis into the vagina or anus, by contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus." Jury instruction 20 repeated this definition.

ed him under the instruction given. "The court was not obliged to express this concept in defendant's words so long as it was adequately conveyed to the jury." *State v. Carpenter*, 334 N.W.2d 137, 141 (Iowa 1983).

B. The substance of defendant's second requested instruction is that consent is a defense to the charge of assault with intent to commit sexual abuse even under the facts of the present case. In support of the correctness of this statement, defendant points out that Iowa Code section 709.11 defines the crime of which he was convicted as "an assault, *as defined in section 708.1*, with the intent to commit sexual abuse..." (Emphasis added.) Because section 708.1 provides for consent as a defense to the charge of assault,[5] defendant argues that consent should also be a defense to the charge of assault with intent to commit sexual abuse.

 This contention, though superficially appealing, ignores the longstanding principle that a person cannot consent to an assault made with intent to perform an act that is prohibited by law regardless of consent. The closest parallel to the present case is offered by our previous cases on statutory rape. *In State v. Hoel*, 238 Iowa 130, 132, 25 N.W.2d 853, 854 (1947), it was said that, although consent would be a defense to a charge of simply assaulting an underage girl, it could not be a defense to the charge of assault with intent to commit rape, because the girl was legally incapable of consenting to sexual intercourse. To the same effect is *State v. Roby*, 194 Iowa 1032, 1035–36, 188 N.W. 709, 711 (1922).

 In this case the jury found that defendant intended to engage in a sex act with John and assaulted him with that intent. Iowa Code section 709.4(5) provides that any sex act between John (fourteen years old at the time of the assault) and

defendant (more than six years older than John) would have constituted a crime regardless of John's consent. *See State v. Willet*, 305 N.W.2d 454, 457 (Iowa 1981). It follows by analogy to the cases cited in the previous paragraph that John could not have consented to an assault with intent to commit sexual abuse.

 We are aware that the cited statutory rape cases were decided when the crime of assault was not expressly defined by the Code of Iowa, but instead by the common law. *See State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982). However, the 1978 revision of the Iowa Criminal Code, which contained the present statutory definition of assault, will not be construed as altering the prior law unless the legislature's intent to do so is clear and unmistakable. *Id.*

 We are satisfied that the present law of assault with intent to commit sexual abuse is a restatement of the prior law of assault with intent to commit rape insofar as the issue of consent as a defense is concerned. In each case the legal inability of the victim to consent to the intended act precludes a defense of consent to the assault preceding it. The legislature, in enacting the 1978 revision of the criminal code, did not clearly and unmistakably show an intent to reduce the protection the law had previously afforded to those deemed unable to consent to sex acts. We will not do so here. The trial court did not err in refusing to submit defendant's second requested instruction.

We have considered all contentions advanced by defendant and find them to be without merit. The case is affirmed.

AFFIRMED.

---

5. Iowa Code section 708.1 enumerates acts defined as assault, and then continues:

 Provided, that where the person doing any of the above enumerated acts, and such other person, are voluntary participants in a sport, social or other activity, not in itself criminal, and such act is a reasonably foreseeable incident of such sport or activity, and does not create an unreasonable risk of serious injury or breach of the peace, the act shall not be an assault.