# IN THE COURT OF APPEALS OF IOWA

No. 18-0208
Filed November 6, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TAIT OTIS PURK,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Tama County, Ian K. Thornhill, Judge.

Defendant appeals his conviction and sentence for second-degree murder.
**AFFIRMED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Jesse Linebaugh, Mitch G. Nass (until withdrawal), Daryna Ternavska, and Monika Sehic of Faegre Baker Daniels, LLP, Des Moines, for amicus curiae Innocence Project of Iowa.

Heard by Bower, C.J., and May and Greer, JJ.

**MAY, Judge.**

Following a bench trial, the district court found Tait Purk guilty of second-degree murder. On appeal, he argues (1) prior-bad-acts evidence was improperly admitted, (2) his counsel was ineffective for failing to object to the introduction of polygraph evidence, and (3) the guilty verdict was not supported by sufficient evidence or was contrary to the weight of the evidence. Purk also raises various ineffective-assistance claims as well as a Confrontation Clause claim in a pro se brief. We affirm his conviction and sentence. And we preserve all but one ineffective-assistance claim for future postconviction proceedings.

## I. Facts and Prior Proceedings

The district court could have reasonably found these facts to be true. In 2000, Purk lived with his fiancé, Cora Okonski, and her young son. Prior to April 16, 2000, Purk physically abused Okonski. He even choked her to unconsciousness.

On April 16, Okonski went to her neighbor, Ricky Jo Sanchez,[1] and stated she and Purk had been fighting. Okonski told Sanchez that Purk was angry and she was afraid Purk would kill her. Okonski asked Sanchez to watch her house and alert police if it appeared Purk was harming her. Then Okonski returned home—to Purk.

Okonski has not been seen or heard from since April 16, 2000.[2] She has not contacted her parents. She has neither contacted her son nor made

---

[1] Sanchez was formerly known as Ricky Jo Weber in 2000.
[2] We note originally Purk claimed Okonski left to purchase cigarettes on the night of April 16, 2000, and never returned. At trial, Purk advanced an alternative theory—that Okonski

arrangements for his care. Although she receives monthly social security disability benefits, Okonski has not picked up a check since April 2000.

Evidence suggests Okonski disappeared because Purk killed her. Purk told a friend, Chadwick Rogers, that "he had to kill his former girlfriend because she was going to turn him in about a stolen truck and a burglary." Purk was even more specific in his confession to Sean Ward, a fellow prisoner during 2004 and 2005. When talking with Ward, Purk referred to Okonski by her first name, Cora. Purk told Ward about "one occasion that they were fighting, and during the fight he ran across the room and grabbed her by the throat and slammed her on the floor and killed her." Purk told Ward he did this because "[s]he threatened to call the police on him."

In December 2016, a grand jury indicted Purk for first-degree murder. Following a jury trial, Purk was found guilty of first-degree murder. But the district court granted Purk's motion for new trial. Purk then waived his right to a jury trial and requested a bench trial. The district court found Purk guilty of second-degree murder and sentenced him accordingly. He now appeals.

## II. Standard of Review

Different standards of review apply to different issues raised in Purk's appeal. First, our review of the admission of prior-bad-acts evidence is for abuse of discretion. *State v. Putnam*, 848 N.W.2d 1, 8 (Iowa 2014).

---

fled to Chicago. The district court heard evidence concerning the Chicago theory and rejected it. The court noted: "As to the alleged eyewitnesses in the Chicago area who identified Ms. Okonski's picture to law enforcement during the initial investigation as someone they saw alive after April 16, 2000, the court wholly discounts this hearsay evidence as unreliable. On the corroborated admissions by defendant to Rogers and Ward alone, the court finds beyond a reasonable doubt that Ms. Okonski is dead and that defendant killed her on April 16, 2000."

Next, "[a] claim of ineffective assistance of counsel requires a de novo review because the claim is derived from the Sixth Amendment of the United States Constitution." *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006).

"We review sufficiency-of-the-evidence claims for correction of errors at law." *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). "We will uphold a finding of guilt if 'substantial evidence' supports the verdict. 'Substantial evidence' is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . . [W]e view the evidence in the light most favorable to the State." *State v. Pace*, 602 N.W.2d 764, 768 (Iowa 1999) (citations omitted).

Finally, "[t]rial courts have wide discretion in deciding motions for new trial." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

## III. Admission of Prior-Bad-Acts Evidence

Purk contends the district court abused its discretion in admitting testimony from Josh York and Tarah Bear regarding his prior bad acts to establish motive to kill Okonski. York testified to witnessing Purk choke Okonski into unconsciousness during a fight. Bear testified Purk once told her about choking Okonski during a fight until she was unconscious. York and Bear's testimony was admitted over Purk's objections. So error was preserved.[3]

---

[3] Purk also asserts testimony from Detective Bruce Rhoads and Officer John Carr, regarding an additional domestic disturbance and alleged participation in a robbery, was improperly admitted under Iowa Rule of Evidence 5.404(b). However, Purk failed to object to such testimony at trial, and the district court did not rule on admissibility. Therefore, error was not preserved, and we decline to address those issues on direct appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Normally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). However, such evidence "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

We use a three-step analysis to evaluate the admission of evidence of prior bad acts. First, we must determine if the evidence is relevant to a legitimate factual issue. *State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014). If the evidence is relevant, we then consider if there is "clear proof the individual against whom the evidence is offered committed the bad act or crime." *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). If these elements are satisfied, we must consider whether the evidence's "probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.*

Purk's appeal rests on the second element of the analysis—the clear-proof standard. To meet this standard, the bad act does not need to be established beyond a reasonable doubt, nor does it need to be corroborated. *State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004). There must simply be proof that prevents the factfinder from speculating or drawing inferences based on mere suspicion. *State v. Spargo*, 364 N.W.2d 203, 209 (Iowa 1985). Testimony from a credible witness satisfies the requirement. *Putman*, 848 N.W.2d at 9.

We start with York's testimony. Purk claims the district court did not determine York was credible. Yet the district court's ruling specifically affirms

York's credibility. The district court found he "credibly testified" that "[he] witnessed [Purk] choke Ms. Okonski until she passed out."

Even so, Purk contends York is discredited by the lack of specifics in his testimony. Purk highlights York's inability to specify the exact date the alleged choking occurred. But that does not automatically disqualify York's testimony. The question is whether shortcomings in a witness's testimony require the factfinder to speculate about the actual occurrence of the event described. *See State v. Moon*, No. 00-1128, 2002 WL 663486, at *4 (Iowa Ct. App. Apr. 24, 2002) ("The evidence establishes how, when and where . . . and thereby completes the story of the crime."). In our view, that is not the case with York's testimony. Although he was unclear about dates, he was clear about seeing Purk choke Okonski.

Purk also contends testimony from his nephew, Jeremy Purk, discredits York's testimony. York referenced a certain truck that Jeremy allegedly drove at the time. But Jeremy claimed he did not purchase the truck until two years later. Jeremy also testified he was not with York during the alleged choking incident and he had never seen Purk attack Okonski. These are simply conflicting pieces of evidence. The district court, as the factfinder, was well positioned to "resolve those conflicts in accordance with its own views as to the credibility of the witnesses." *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998).

We turn next to Bear's testimony. Although Purk concedes the district court found Bear credible, he disagrees with that finding. Bear did not immediately report the incident Purk described to her. Initially, she thought Purk was joking. It was not until federal investigators confronted her about Okonski's disappearance that she took Purk seriously and relayed what Purk told her. But this delay does

not disqualify the testimony under the clear-proof standard. Clear proof is meant to be a safeguard against speculation on the part of the factfinder. *Spargo*, 364 N.W.2d at 209. Bear's testimony consisted of a reasonably detailed description of a specific event. *See id.* The district court did not need to speculate about the event she described.

In short, we conclude the clear-proof standard was met as to both York and Bear. The district court did not abuse its discretion by admitting their testimony under Iowa Rule of Evidence 5.404(b).

## IV. Ineffective-Assistance-of-Counsel Claim[4]

Purk next asserts his counsel was ineffective for failing to object or move for a mistrial when polygraph evidence was introduced by the State. It is true that, during the State's direct examination of a witness, polygraph evidence was mentioned. Defense counsel did not object. But, before cross-examination, the district court excused the witness and the following colloquy occurred:

> THE COURT: I heard [the] witness specifically tell me that someone who potentially is a person of interest in this case took and passed a polygraph. That's wholly inadmissible. And if that would have happened in front of a jury, we'd be done.
> . . . .
> THE COURT: . . . . So did I get an objection from [defense counsel] when I heard this answer?
> [DEFENSE COUNSEL:] No. I was reading a note from my client. And I apologize, Your Honor. I did not object.
> THE COURT: All right. Well, fortunately for everyone here, this is not a jury trial, this is a bench trial, and I will be disregarding

---

[4] We recognize Iowa Code section 814.7 was recently amended to provide in pertinent part: "An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief" and "shall not be decided on direct appeal from the criminal proceedings." *See* 2019 Iowa Acts ch. 140, § 31. In *State v. Macke*, however, our supreme court held the amendment "appl[ies] only prospectively and do[es] not apply to cases pending on July 1, 2019." 933 N.W.2d 226, 235 (Iowa 2019). We are bound by our supreme court's holding. We conclude, therefore, the amendment "do[es] not apply" to this case, which was pending on July 1, 2019. *Id.*

that entire testimony from this witness regarding Mr. Lambert and why they didn't consider him a suspect any longer and this whole testimony about a polygraph. It's completely inappropriate. And again, fortunately for all involved here, this is not a mistrial because this is tried to the court and I understand that information is not admissible, and I will not be considering it in the slightest.

To prevail on his ineffective-assistance-of-counsel claim, Purk must show counsel failed to perform an essential duty and the failure resulted in prejudice. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Both must be proven by a preponderance of the evidence. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001); *see also State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal."). To show prejudice, Purk must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma*, 626 N.W.2d at 145 (quoting *Strickland*, 466 U.S. at 694).

We conclude Purk cannot show prejudice. To begin with, we generally recognize that, in a bench trial, the potential prejudice of inadmissible testimony is reduced. *See State v. Aguilar*, No. 14-1225, 2015 WL 5965076, at *6 (Iowa Ct. App. Oct. 14, 2015). "This is because legal training helps equip those in the profession to remain unaffected by matters that should not influence the determination." *State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004) ("[A]n appellate court is less likely to reverse when improper evidence is introduced in bench trials in which the matter is for a judge's determination rather than for determination by a jury.").

Moreover, in this case, the trial judge expressly acknowledged the polygraph evidence was inadmissible. The trial judge also expressly disclaimed any reliance on the evidence. "I understand that information is not admissible," the judge said, "and I will not be considering it in the slightest." So, from a practical point of view, this situation was no different from a case in which inadmissible evidence is offered, an opponent objects, and the district court declines to admit the evidence. Neither situation presents grounds for a mistrial in a bench trial.

Purk cannot demonstrate prejudice. Therefore, his ineffective-assistance claim cannot prevail.

## V. Sufficiency and Weight of the Evidence

### A. Sufficiency of the Evidence

Because Okonski's body was never recovered and the State's case relies heavily on circumstantial evidence, Purk argues the record is insufficient to demonstrate he is guilty of second-degree murder. We disagree.

"We uphold a verdict if substantial evidence supports it." *Quinn*, 691 N.W.2d at 407. "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Biddle*, 652 N.W.2d 191, 197 (Iowa 2002). "We review the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* We make no distinction between direct and circumstantial evidence. *See State v. Kelso-Christy*, 911 N.W.2d 663, 668 (Iowa 2018) ("Direct and circumstantial evidence are equally probative." (citation omitted)).

Our review has revealed ample evidence—some direct, some circumstantial—from which a reasonable factfinder could infer Purk purposefully killed Okonski on April 16, 2000. In brief summary, evidence supporting the district court's findings shows: (1) Okonski permanently disappeared on April 16, 2000; (2) Okonski had fought with Purk on April 16, 2000; (3) during the fight, Okonski threatened to tell police about Purk's criminal activity; and (4) in response, "he ran across the room and grabbed her by the throat and slammed her on the floor and killed her."

Purk disagrees on several grounds. We begin by considering his argument concerning the reliability of two witnesses, Rogers and Ward, both of whom testified about Purk's admissions of guilt

Rogers met Purk in a halfway house in late 2000. Rogers testified Purk told him that "he had to kill his former girlfriend because she was going to turn him in about a stolen truck and a burglary."

Ward was one of Purk's fellow inmates in federal prison around 2004. Ward testified Purk had told him the following: he lived with Okonski and the two fought frequently; during one fight, Purk grabbed Okonski by the throat and slammed her to the ground, which resulted in her death; he stored her body in the bathroom closet overnight; and he buried her in some type of park or preserve the next day. Ward also provided specific details about Okonski that Purk had shared, such as the fact that she had a young son whom Purk had surrendered to Okonski's parents a couple of days after Okonski went missing. Finally, Ward testified the reason Purk killed her was because she threatened to call police on him.

Purk argues Rogers and Ward's testimony is inherently unreliable.[5] In *State v. Marshall*, our supreme court recognized "the use of jailhouse informants who stand to benefit—sometimes substantially—for providing evidence against a defendant raises substantial questions of reliability." 882 N.W.2d 68, 82 (Iowa 2016). The holding of *Marshall*, though, concerned the Sixth Amendment. We do not believe Purk is raising a Sixth Amendment claim here.

Instead, Purk's core argument is that, because Rogers and Ward may have thought they had something to gain from their testimony, we should not consider their testimony in our sufficiency-of-the-evidence analysis. That is not the law in Iowa. Rather, the motives of a witness—including hopes of leniency as to criminal charges—are credibility issues for the factfinder.[6] The same factfinder could also consider the dangers faced by informants, who are sometimes referred to as "snitches," and who sometimes end up in "ditches." Those dangers were probably obvious to Rogers and Ward—especially after Purk told them he had killed someone who threatened to talk to the police about him.

In short, Purk's arguments about jailhouse informants boil down to credibility arguments. The district court resolved those arguments when it found Rogers and Ward credible.

---

[5] The Innocence Project of Iowa also filed an amicus brief providing research and information supporting Purk's assertion.

[6] As a side note, we see no grounds to believe Ward's testimony was driven by an interest in obtaining leniency. Ward was already serving prison time for a federal conviction and did not seek out the police. Instead, Ward confided in his grandfather, who lived in Iowa. He told his grandfather about Purk's admission and asked his grandfather to find out if someone named Cora was missing. Ward claims his grandfather was friends with a local sheriff, who relayed the information to the appropriate authorities. Eventually, police visited Ward in prison and interviewed him.

Purk also argues his confessions to Rogers and Ward were not sufficiently corroborated. Like the district court, we disagree.

Under Iowa Rule of Criminal Procedure 2.21(4), "[t]he confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense." While Purk's statements to Rogers and Ward may be better characterized as admissions rather than confessions, both kinds of self-incrimination are treated the same. *See State v. Meyers*, 799 N.W.2d 132, 139 (Iowa 2011).

"Corroborating evidence is sufficient to support a conviction based on a confession when it tends to 'confirm[] some material fact connecting the defendant with the crime.'" *Id.* (citation omitted). "Corroborating evidence may be either direct or circumstantial." *Id.* "It need not be strong evidence, 'nor need it go to the whole of the case so long as it confirms some material fact connecting the defendant with the crime.'" *Id.* (citation omitted). "Circumstantial corroborating evidence may include several facts that, when combined, support the admission." *Id.*

Circumstantial evidence corroborated Purk's admissions to killing Okonski. Rogers testified Purk told him about a stolen truck and burglary; that his girlfriend threatened to report him to police; and because of that, "he had to kill" her. Similarly, Ward testified Purk shared the following details: Purk and Okonski frequently fought; Okonski threatened to call police, so Purk grabbed her throat and slammed her to the ground, killing her; Purk then hid her body in a bathroom closet overnight and buried it the next day in a park; Okonski's parents lived in Illinois; and Purk called Okonski's parents to collect the Okonski's son a couple

days later. But there is no evidence Rogers or Ward ever knew Okonski personally. So their knowledge of details, including Okonski's threat to call police and her family dynamics, supports the conclusion Purk was the source for the information. As the district court found concerning Ward, his "knowledge of these ancillary facts significantly added to the credibility and reliability of his testimony."

Moreover, as already explained, there was substantial circumstantial evidence Okonski died on April 16, 2000. There was evidence that, prior to April 16, Purk had physically abused Okonski by choking her to unconsciousness. There was also ample evidence Purk and Okonski were fighting on April 16 and, indeed, that Okonski was afraid for her life.

These and other facts, "when combined, support" Purk's admission to killing Okonski. *See id.* So we find those admissions were sufficiently corroborated.

Purk also asserts the district court failed to properly consider exculpatory evidence that Okonski may have been alive after April 16, 2000. In its ruling, though, the district court specifically addressed the defense evidence. The district court acknowledged Purk had "no obligation to present any evidence or to prove anything." However, once he did so, "the court, as the finder of fact, [was] free to scrutinize the veracity of that evidence and the plausibility of the argument." The district court did so. For example, the district court found the eyewitness report that Okonski was in Chicago unreliable and "wholly discount[ed]" the hearsay evidence. We find the district court properly considered the evidence at trial. *See State v. Guthrie*, No. 10-1285, 2011 WL 2694713, at *2 (Iowa Ct. App. July 13, 2011) ("It is the job of the trier of fact to assess the credibility of witnesses and decide the weight of the evidence.").

In conclusion, we find a rational factfinder could be convinced Purk was guilty beyond a reasonable doubt. *See Biddle*, 652 N.W.2d at 197. Sufficient evidence supports the district court's verdict.

## B. Weight of the Evidence

In the alternative, Purk briefly argues the weight of the evidence heavily preponderates against finding Okonski was dead on April 16, 2000, or that he killed her. So Purk claims the district court abused its discretion in denying his motion for a new trial.

Iowa Rule of Criminal Procedure 2.24(2)(b)(6) provides a court may grant a new trial "[w]hen the verdict is contrary to law or evidence." Our supreme court has held "contrary to the evidence" in rule 2.24(2)(b)(6) must be interpreted to mean "contrary to the weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

> The weight-of-the-evidence standard requires the district court to consider whether more "credible evidence" supports the verdict rendered than supports the alternative verdict. It is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses. Nonetheless, it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered. The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether "a greater amount of credible evidence" suggests the verdict rendered was a miscarriage of justice.

*State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (citations omitted).

Again, "[a]ll the testimony on this issue was before the district court and it was for the court, as factfinder, to determine witness credibility and the weight of the evidence as a whole. Trial court findings on credibility of witnesses are entitled

to considerable deference by this court." *State v. Workman*, No. 06-0151, 2007 WL 1687506, at *5 (Iowa Ct. App. June 13, 2007) (citations omitted). So we defer to the district court's credibility findings. Based on those findings, it is clear the most credible evidence—including the testimony of Rogers and Ward—supported the district court's findings that Okonski is dead because Purk killed her.

Purk insists exculpatory evidence was not properly considered. As explained, the district court considered the defendant's evidence and discounted it. And the district court even found "it significant and probative that [Purk] ha[d] attempted to manipulate the evidence," including sending letters to suggest Okonski was still alive[7] and "unduly influenc[ing]" a former cellmate to testify on his behalf.

We do not find "'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Ary*, 877 N.W.2d at 706 (citation omitted). And we affirm the district court's denial of the motion for new trial.

## VI. Pro Se Claims[8]

### A. Ineffective Assistance Claims

In his pro se brief, Purk raises four ineffective-assistance-of-counsel claims on appeal. He claims counsel was ineffective for the following reasons: (1) counsel

---

[7] Purk sent a letter to Okonski at her parents' address. In it, Purk wrote he believed Okonski had attempted to contact his daughter and urged Okonski to cease contact with him and his daughter. The district court found this letter was an "attempt[] to plant the narrative that Ms. Okonski was still alive."

[8] We note Iowa Code section 814.6A(1) was recently enacted to prohibit defendants from filing pro se briefs when represented by counsel. *See* 2019 Iowa Acts ch. 140, § 30. Our supreme court has not squarely addressed this change in law. However, the supreme court recently addressed similar language contained in another section of the same legislation. *See generally Macke*, 933 N.W.2d at 227–28. It concluded the change in law "appl[ies] only prospectively and do[es] not apply to cases pending on July 1, 2019." *Id.*

was aware other people had information about Purk's admissions to Rogers and Ward; (2) counsel failed to call witnesses to testify that Rogers and Ward were lying; (3) counsel refused to call the witnesses who reported they had communicated with Okonski in Chicago after April 16, 2000; and (4) for the second trial, counsel should have contacted a witness about testimony provided at the first trial.

We find Purk's claims are not adequately presented for our consideration on direct appeal. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (stating "it is not enough to simply claim that counsel should have done a better job" and noting the claimant must "state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome"). Purk provides no proof counsel could have contacted additional witnesses. Additionally, he provides no evidence he was prejudiced by counsel's responses to Rogers and Ward's testimony or by counsel's failure to call certain witnesses.[9]

On this record, we are unable to determine whether counsel's trial choices amounted to ineffective assistance. *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992) ("Improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel."). We must

---

at 235. We apply this reasoning to section 814.6A(1) and conclude it does not apply to this appeal, which was filed prior to July 1, 2019.

[9] In his pro se brief, Purk states, "Had the counsel for defense not made the errors, the outcome of the trial may have been different." One of Purk's burdens in raising ineffective-assistance claims is to show "that, but for counsel's unprofessional errors," the trial's result would have been different. *Ledezma*, 626 N.W.2d at 145 (quoting *Strickland*, 466 U.S. at 694). A mere statement suggesting the "trial may have been different" is insufficient to establish the prejudice element.

therefore preserve these claims for future postconviction proceedings. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) (noting our court should preserve an ineffective-assistance-of-counsel claim, "[i]f the development of the ineffective-assistance claim in the appellate brief was insufficient to allow its consideration").

### B.    Confrontation Clause Claim

Lastly, Purk vaguely contends he was denied a fair trial because he was unable to confront certain witnesses. Our review of this issue is de novo. *State v. Schaer*, 757 N.W.2d 630, 633 (Iowa 2008).

"The Confrontation Clause of the United States Constitution states the accused has the right 'to be confronted with the witnesses against him [or her].'" *State v. Kennedy*, 846 N.W.2d 517, 522 (Iowa 2014) (quoting U.S. Const. amend. VI).

Purk makes the following argument:

> The district court abused its discretion in allowing [the Division of Criminal Investigation] agent to testify about what the "other" witnesses mentioned above, had told him and making personal assurances of what they told him. The defendant had a right to confront these witnesses to expose the falsehood in Rogers and Wards testimony by comm[i]tting perjury. Mr. Purk was denied a fair trial, of which he was deprived of.

Although Purk does not specify the agent he is referring to, it appears to be Officer John Carr, whom he also references in his pro se brief. And Purk does not identify these "other" witnesses that Officer Carr testified about. Nevertheless, because this claim is being raised for the first time on appeal, we find error is not preserved. *See Biddle*, 652 N.W.2d at 203 ("The rule of error preservation applies with equal strength to constitutional issues.").

Purk also contends he had a right to confront witnesses that could testify Rogers and Ward were lying. As noted above, one of his ineffective-assistance claims focuses on counsel's failure to call witnesses to establish Rogers and Ward were lying. We do not believe the Confrontation Clause applies to these concerns. Moreover, Purk did call Dennis Marcussen to testify about Ward's statements. Ward testified Marcussen was present when Purk made statements about killing Okonski. But Marcussen testified he was not present when the statements were made.

We find no violation of the Confrontation Clause. And we find Purk was not denied a fair trial.

## VII. Conclusion

For all the reasons discussed, we affirm Purk's conviction and sentence for second-degree murder.

**AFFIRMED.**